492 A.2d 1139

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Edward R. DAVIES.**

Superior Court of Pennsylvania.

Argued Aug. 7, 1984.

Filed May 17, 1985.

Dara A. Decourcy, Assistant District Attorney, Pittsburgh, for Com., appellant.

David J. Greenberg, Pittsburgh, for appellee.

Before BROSKY, WATKINS and HESTER, JJ.

BROSKY, Judge:

This is an appeal from an order entered granting appellee's motion to dismiss. Appellant contends that the trial court erred in dismissing a charge of vehicular homicide brought against appellee, because appellant violated Pa.R. Crim.P. 1100 and 18 Pa.C.S. § 110. We agree with appellant and, accordingly, reverse the order of the trial court and remand the case for trial.

On June 14, 1981, a criminal complaint was filed charging that appellee, Edward P. Davies, operated a motor vehicle

while under the influence of alcohol.[1] Appellee was the driver of a van which struck a pedestrian, Michael McDonough.

On June 17, 1981, Mr. McDonough died from the injuries that he had received. On June 20, 1981, a second criminal complaint was filed, charging appellee with homicide by vehicle.[2]

On July 1, 1981, a preliminary hearing was held on both complaints. The magistrate dismissed the charge of homicide by vehicle for the Commonwealth's failure to state a prima facie case and held the appellee for court on the charge of driving under the influence.

An information was then filed charging appellee with driving under the influence, and the case was listed for trial. The District Attorney subsequently recommended appellee for placement in the Accelerated Rehabilitative Disposition program (A.R.D.). The court approved a one year probation for appellee and other related penalties. All of the conditions of the A.R.D. program were successfully completed by appellee on October 31, 1982.

On October 2, 1982, a new Criminal Complaint was filed charging appellee with the summary offense of driving at an unsafe speed [3] and homicide by vehicle. This filing was based upon new evidence volunteered to the Commonwealth by witnesses to the incident. These witnesses informed the police of their knowledge in September of 1982.

On October 21, 1982, the appellee was charged by information with homicide by vehicle. Counsel for appellee, on November 17, 1982, filed an omnibus motion in which he sought dismissal of the criminal information, alleging that by calculating the period of the rule from the filing of the first complaint on June 14, 1981, Rule 1100 had been violated. Appellee further alleged that prosecution was barred based upon 18 Pa.C.S. § 110.

1. 75 Pa.C.S. § 3731.
2. 75 Pa.C.S. § 3732.
3. 75 Pa.C.S. § 3361.

On November 24, 1982, a hearing was held on appellee's motion. On that date, the court granted the petition, finding violations of both Rule 1100 and 18 Pa.C.S. § 110. The trial court's rationale for rendering this decision was that the Commonwealth was not diligent in its investigation and that it intentionally failed to summon known witnesses in an attempt to circumvent Rule 1100. The Commonwealth timely filed this appeal from the order dated November 24, 1982.

Appellant argues that the lower court erred in dismissing the complaint pursuant to Rule 1100, and that the proper method of computation of the 180–day period of Rule 1100 was to begin calculating the time from the filing of the second complaint. A substantial number of cases dealing with the effect of Rule 1100 in a first complaint/second complaint solution have generally applied the *"Mumich-Braithwaite"* test, reflecting the holdings of *Commonwealth v. Mumich,* 239 Pa.Super. 209, 361 A.2d 359 (1976) and *Commonwealth v. Braithwaite,* 253 Pa.Super. 447, 385 A.2d 423 (1978). The rule promulgated in these cases was that the 180–day period would begin to run again upon the filing of a subsequent complaint providing that two prerequisites were met: (1) the first complaint had been properly dismissed, and (2) the record did not disclose evidence on the part of the Commonwealth to circumvent Rule 1100.

The case which has been cited as first modifying this test is *Commonwealth v. Johnson,* 487 Pa. 197, 409 A.2d 308 (1979). In *Johnson,* a complaint was filed and the matter was presented to a grand jury which dismissed the indictment for lack of evidence. After procuring additional evidence the Commonwealth re-presented the matter to a new grand jury which approved the indictment. The Supreme Court held that in such a situation the period between the two indictments should be tolled for purposes of Rule 1100, i.e., that the period of time between the two indictments would be excluded from the calculation of the Rule 1100 period. However, the Supreme Court, in the case of *Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981),

recognized that *Johnson* did not involve a first complaint/second complaint situation. In *Genovese,* a district justice dismissed the first complaint for lack of a prima facie case. Upon the filing of a second complaint a second district justice held the case for trial. The *Genovese* court refused to extend the *Johnson* "tolling" approach to the first complaint/second complaint situation and reaffirmed the viability of the *"Mumich-Braithwaite"* standard.

However, in *Commonwealth v. Navarro,* 499 Pa. 279, 453 A.2d 308 (1982), and *Commonwealth v. Leatherbury,* 499 Pa. 450, 453 A.2d 957 (1982) the Supreme Court, in two short opinions, calculated the Rule 1100 period in a first complaint/second complaint situation by use of the *Johnson* "tolling" rationale. In other words, it began calculating the Rule 1100 period from the filing of the first complaint but excluded the time between the dismissal of that complaint and the filing of the second complaint.

A comparison of the *Johnson* "tolling" rationale and the "Mumich-Braithwaite" test indicates that, under either approach, two prerequisites must be met: that the first complaint has been properly dismissed, and that the record reveals no evidence that the Commonwealth attempted to circumvent Rule 1100. Thus, the only practical difference between the two approaches is whether the time between the filing of the first complaint and the dismissal of that complaint is included in the calculation of the Rule 1100 period.

In both *Navarro* and *Leatherbury* the same result would have resulted through the use of either the *Johnson* approach or the *"Mumich-Braithwaite"* test. Additionally, we note that nowhere in *Navarro* or *Leatherbury* does the court expressly overrule its holding in *Genovese.*[4] While it would seem that under these circumstances *Genovese* thus still governs the method of calculating the Rule 1100 period where the prerequisites discussed above have been met, we

4. Indeed, while in *Navarro* the Supreme Court discusses *Genovese,* it only notes that the result it reaches would have been the same under *Genovese.*

need not decide this issue, for, in the instant case, the same result would be obtained by use of either the *Johnson* or the *"Mumich-Braithwaite"* method of calculation. Under either method the Rule 1100 period would not have been exceeded by the Commonwealth.

The first prerequisite of *"Mumich-Braithwaite"* is that the first complaint was properly dismissed. "[O]ur Court ... has interpreted ' "[p]roper dismissal" ... to mean that proceedings on the charges contained in the complaint were dismissed by a competent magisterial or judicial authority who committed no error of law in doing so. This would include, we think, dismissal for failure to make out a prima facie case'. *Commonwealth v. Ardolino,* supra [304 Pa.Super. 268] at 276, 450 A.2d [674] at 679, quoting *Commonwealth v. Brennan,* supra [264 Pa.Super. 206] at 210, 399 A.2d [739] at 741." *Commonwealth v. McClain,* 325 Pa.Super. 29, 31, 472 A.2d 630, 631 (1984).

■ Instantly, while a prima facie case of driving under the influence was established at the preliminary hearing on the first complaint, the statements of the witnesses did not suggest the presence of the causal connection between that motor vehicle code violation and the victim's death necessary to establish a prima facie case of homicide by vehicle. Thus, we find that that charge was properly dismissed.

The second prerequisite is that the record discloses no evidence on the part of the Commonwealth to circumvent Rule 1100.[5] The Commonwealth contends that its failure to

---

5. The analysis used by the Supreme Court in *Leatherbury* casts some doubt on the continuing viability of the second prerequisite of *"Mumich-Braithwaite"* in cases where the first complaint is dismissed rather than withdrawn through use of the *nolle prosequi* procedure. In *Leatherbury* the court stated the following:

Since the Superior Court's decision in the present case, this Court has held that Rule 1100 should be tolled between the dismissal of a first complaint and the filing of a second complaint, except where "there is an obvious attempt to evade the requirements of Rule 1100(c) [ (governing applications of the Commonwealth for extensions of time) ] through the use of the nolle prosequi procedure." *Commonwealth v. Johnson,* 487 Pa. 197, 204, 409 A.2d 308, 311 (1979). Accord, *Commonwealth v. Navarro,* 499 Pa. 279, 453 A.2d 308 (1982). Because the charges contained in the first complaint

prove a prima facie case of homicide by vehicle did not reflect an intention to circumvent Rule 1100, but was simply the result of the fact that its interviews with the witnesses did not produce evidence of a causal connection between the offense of driving under the influence and the victim's death or any evidence that the van was traveling at an unsafe speed. It argues that it later received new evidence from two witnesses that suggested that appellee was traveling at an excessive rate of speed and that the victim was not able to avoid the impact. The Commonwealth also notes that, after the dismissal of the homicide by vehicle charge, the record discloses that the investigation continued during September and October of 1981, before the Commonwealth recommended ARD disposition, but contends that no additional evidence was discovered.

At the preliminary hearing of July 1, 1981, one eyewitness, David Lewanewsky, testified for the Commonwealth. He testified favorably toward appellee, stating that while he was uncertain of the van's speed, he estimated it to be between fifteen and twenty-five miles per hour.

were dismissed, the period between the dismissal and the filing of the second complaint is properly excluded under Rule 1100. With this exclusion, it is clear that appellee was tried in compliance with the Rule.

*Id.,* 499 Pa. at 453, 453 A.2d at 958.

Thus, the *Leatherbury* court appears to have drawn a distinction between those cases in which the first complaint is withdrawn by the Commonwealth by use of the *nolle prosequi* procedure and those in which it is dismissed by the court. It implies that the Rule 1100 period will run continuously from the filing of the first complaint *only* where the Commonwealth withdraws the first complaint by use of the *nolle prosequi* procedure and that procedure is obviously used to attempt to evade the requirements of Rule 1100. It further implies that, if the complaint is instead dismissed, the Rule 1100 period will not run continuously from the first complaint even if the dismissal was the result of an effort by the Commonwealth to circumvent Rule 1100. See *Leatherbury,* supra. (O'Brien, C.J. dissenting). While such a holding would certainly seem somewhat incongruous and would overrule a large body of case law, see *Ardolino,* supra, we need not decide whether this is indeed the holding of *Leatherbury* since, as discussed infra., the record reveals no attempt by the Commonwealth to circumvent Rule 1100 by having the charges in the first complaint dismissed.

At the coroner's inquest of October 1, 1982, the only passenger in appellee's van at the time of the accident, Patrick Megarry, testified as follows:

Q. Do you remember talking to the police back on June 14 of last year, 1981?

A. Not really.

Q. Do you remember giving the police a statement?

A. Yes, kind of, just for a minute. We only talked about a minute.

Q. Do you remember what you told the police when you talked to them last year?

A. I don't know exactly.

Q. Mr. Megarry, the police officers stated that you said you were going down Voscamp Street, travelling west and going about 20 miles per hour, and you noticed some people talking out in the street near the curb. Would that be a correct statement of what you said last year to the police officers?

A. Yes, probably.

Q. Do you remember saying that?

A. I don't remember saying it, but if they've got it down, I guess I said it.

Q. Do you remember giving the police an estimate as to how fast the van was going?

A. I don't remember exactly telling them right there, but I guess I did.

Q. Do you remember telling the police that this man, as you describe him, stepped out in front of the van when you were about four feet away from him?

A. Not really.

Q. Do you remember talking to the police this year?

A. Yes.

Q. Back on September 16, 1982?

A. Yes.

Q. Do you drive a car?

A. Yes.

Q. How long have you been driving?

A. I guess nine years.

Q. Could you see the speedometer of the van that day from where you were seated?

A. No.

Q. Do you know approximately how fast that van was going down Voscamp Street?

A. I'd say about 35 or 40 miles an hour.

Also testifying at the inquest was another eyewitness, John Klinger, who stated the following:

Q. Mr. Klinger, do you recall being interviewed by the Pittsburgh police on September 15, 1981?

A. Yes.

Q. Do you remember what you told the police about what the speed of the van was?

A. I remember everything I said.

Q. What did you tell the police was the speed of the van at that time?

A. I said 20 miles an hour.

Q. You were re-interviewed by the police on September 13, 1982, about three weeks ago, were you not?

A. Yes.

Q. And you told them what speed at that time?

A. Forty-five or 50. No less than 45.

Q. Isn't it also true that you told the police that on September 15, 1981 that you did not actually see Mr. McDonough get hit?

A. Yes, I said that.

Q. Would you agree when I state that the two stories you told are different?

A. They are not different. They are similar. I didn't want to get involved, so I didn't say too much, because then I would be sitting here and having to say it. So I didn't tell too much. I only told enough not to get myself sitting right here.

Q. There's a big difference between 25 miles an hour and 45 miles an hour. Would you agree?

A. Yes. I didn't want to get involved.

Q. What caused you to change your mind?

A. His mother come down. She was crying and everything. Eddie ain't no friend of mine, anyway. So she asked me would I talk. I talked. She asked questions. Everyone started telling her the truth.

She said, Why didn't youns tell it then? I told her, I says, the families were being friendly. Why should I get involved? If you people ain't going to be mad about it, I'm not going to be mad.

The court concluded that these two witnesses "originally told the investigating officers that the Defendant was driving within the speed limit, but now claim he was exceeding it and that the deceased did not accidentally get in the way of the vehicle, but was run down by the Defendant." However, the lower court also speculated that since there were many witnesses to the incident, the Commonwealth's failure to establish a prima facie case of vehicular homicide was due to either an intentional attempt to circumvent Rule 1100 by failing to summon known witnesses or the result of a failure to properly investigate the incident.

■ The latter assumption would not violate the second requirement of *"Mumich-Braithwaite."* Investigative ineptitude is not the equivalent of an *intentional* attempt to circumvent Rule 1100. See *McClain,* supra.

■ The former assumption is simply not supported by the record and no reference to the record is made in support of it. It is inconsistent with the lower court's finding that Klinger and Megarry had initially lied to the investigating officers.[6] It is also inconsistent with the Commonwealth's continuing investigation after the dismissal of July 1, 1981. Such investigation would make little sense if it is assumed that the Commonwealth had already discovered witnesses

6. It is apparent from the transcripts of the proceedings below that the lower court believed that the Commonwealth would be wasting the court's time by prosecuting this case since it stood little chance of achieving a conviction in light of the inconsistent statements made by its witnesses. While we may agree as to the likelihood of the Commonwealth winning a conviction, that was, of course, not relevant to appellee's motion to dismiss.

who could establish a prima facie case of vehicular homicide.

■ This Court is only bound by a trial court's factual findings if they are supported by the record. *Commonwealth v. Johnson,* 310 Pa.Super. 385, 456 A.2d 988 (1983). Since we conclude in this case that the lower court's finding that the Commonwealth intentionally attempted to circumvent Rule 1100 is not supported by the record, we find that the second prerequisite of *"Mumich-Braithwaite"* was met.

Appellee, however, citing *Commonwealth v. Earp,* 476 Pa. 369, 382 A.2d 1215 (1978) (plurality), argues that, despite the fact that both prerequisites were met, neither the *"Mumich-Braithwaite"* or the *Johnson* method of calculating the Rule 1100 period should be used in the instant case because, unlike those cases, not all of the charges in the instant first complaint were dismissed. In *Earp,* the defendant was arrested and charged with murder, conspiracy and other offenses arising from a shooting. At a preliminary hearing the murder and conspiracy charges were dismissed because of the Commonwealth's failure to prove a prima facie case. Later, appellant was again charged with murder and conspiracy. A plurality of the Supreme Court opined that the 180–day period must be measured continuously from the date of the filing of the first complaint since only some of the charges were initially dismissed, while the defendant was held in continuous custody on other charges arising from the same criminal episode. "This continuous confinement was the crucial factor in discharging the defendant, even though the murder and conspiracy charges were later refiled and the trial was commenced within 180 days of that date." *Genovese,* 493 Pa. at 70, 425 A.2d at 370 (dicta), quoting *Commonwealth v. Cartagena,* 482 Pa. 6, 19, 393 A.2d 350, 357 (1978) (plurality) (dicta).

■ We believe that the case *sub judice* is distinguishable from *Earp*.[7] Here, appellant was placed in the A.R.D. program. We do not believe that the A.R.D. program is the equivalent of "continuous confinement" as referred to in *Earp*. Enrollment in the program is pursuant to a conditional agreement to dismiss charges at a specified future time. *Commonwealth v. Kindness*, 247 Pa.Super. 99, 371 A.2d 1346 (1977). Admission into the A.R.D. program places criminal proceedings in abeyance, subject to renewal. *Commonwealth v. Krall*, 290 Pa.Super. 1, 434 A.2d 99 (1981). We conclude that such a program does not constitute the "continuous confinement" which was crucial in the *Earp* court's decision to calculate the Rule 1100 period continuously from the date of the filing of the first complaint.

■ Even if the A.R.D. program were to be considered "continuous confinement", we do not believe appellant's argument would prevail. It is clear from the record that the Commonwealth did not know of evidence that would have established a prima facie case of homicide by vehicle at the time of the filing of the first complaint. We think it would be unfair to the Commonwealth for the Rule 1100 period to run continuously from the filing of the first complaint on charges filed in a second complaint arising from the same criminal episode even where the defendant is held to answer for charges in the first complaint, when the Commonwealth is not aware at the time of the filing of the first complaint of evidence that would establish a prima facie case for the charges in the second complaint.[8] Thus,

7. We note that, in any event, *Earp*, as a plurality decision, does not, of course, constitute binding precedent. See *Commonwealth v. Scott*, 279 Pa.Super. 8, 420 A.2d 717 (1980).

8. Cf. *Commonwealth v. Warren*, 313 Pa.Super. 390, 459 A.2d 1285 (1983). In *Warren*, two criminal complaints were filed against the defendant as a result of an automobile collision. The first charged him with driving under the influence. The second, filed 10 days later contained, *inter alia*, charges of involuntary manslaughter and homicide by vehicle. A panel of this Court held that the defendant's Rule 1100 claim had been waived. However, in dicta, two members of the panel agreed that under *Earp*, the 180 day period of Rule 1100 ran continuously from the filing of the first complaint on all charges arising from the automobile collision. We do not believe *Warren*

we conclude that, despite that fact that all the charges in the first complaint were not initially dismissed in the case at bar, the proper method for calculating the Rule 1100 period was that of either *"Mumich-Braithwaite"* or *Johnson.* As noted above, under either method, the Rule 1100 period would not have been exceeded by the Commonwealth.

Appellant also contends that 18 Pa.C.S. § 110 did not provide a correct alternative basis for the lower court to grant appellee's motion for dismissal. Section 110 provides in relevant part as follows:

§ 110. When prosecution barred by former prosecution for different offense.

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense;

■ Appellant argues that, by its own terms, § 110 does not apply to the instant case. We agree.

■ First, admission into the A.R.D. program is not equivalent to a conviction under any circumstances, *Com-*

governs the instant case since, first, its discussion of the Rule 1100 issue was dicta, and second, the facts of that case indicate that the Commonwealth knew of evidence at the time of the filing of the first complaint which would have established a prima facie case for the charges in the second complaint.

*monwealth v. Knepp,* 307 Pa.Super. 535, 453 A.2d 1016 (1982), nor is successful completion of the program equivalent to a finding of innocence, *Commonwealth v. McSorley,* 335 Pa.Super. 522, 485 A.2d 15 (1984). Therefore, 18 Pa. C.S. § 110(1) does not apply to the case at bar.[9]

■ Even if the A.R.D. program were within the contemplation of § 110(1), as previously discussed, the record does not indicate that the prosecuting officer knew of the information which could have established the charge of vehicular homicide at the time the A.R.D. program commenced.[10] Therefore, § 110(1) would still not preclude prosecution on that offense.

Given our conclusion that appellant violated neither Rule 1100 nor § 110, we will remand this case for trial.

Order reversed. Case remanded. Jurisdiction relinquished.

9. 18 Pa.C.S. § 109, which defines the terms acquittal and conviction as used in § 110 provides in relevant part that:

(1) ... There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

....

(3) ... There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. In the latter two cases· failure to enter judgment must be for a reason other than a motion of the defendant.

10. Even this analysis gives appellee the benefit of what can only be termed an unwarranted assumption that the commencement of an A.R.D. program is the equivalent of the commencement of a trial.