**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Walter Eugene TIEDEMAN, Defendant and Appellant.**

**No. 16079.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 2, 1988.

Decided Dec. 7, 1988.

Roger A. Tellinghuisen, Atty. Gen., Janine Kern, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Patrick M. Schroeder, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

ACTION

WUEST, Chief Justice.

Walter Tiedeman (Tiedeman) appeals his conviction for grand theft. We affirm.

FACTS

Tiedeman was charged by complaint with third degree burglary and grand theft. Tiedeman made his first appearance on these charges on May 6, 1987, and his preliminary hearing was set for June 3, 1987. Tiedeman appeared on June 3, however, state's witnesses did not appear and state could not proceed. State moved for a continuance which was denied. Thereupon, Tiedeman moved for a dismissal of the charges which was granted without prejudice.

Tiedeman was subsequently recharged in a second complaint with third degree burglary and grand theft. Tiedeman entered his first appearance on these charges on June 24, 1987, and another preliminary hearing date was set. Prior to the preliminary hearing, however, Tiedeman was indicted by a grand jury for third degree burglary and two counts of grand theft. Therefore, state voluntarily dismissed the second complaint against Tiedeman.

The day before Tiedeman's trial on the charges in this indictment, state voluntarily

dismissed the indictment. Tiedeman was subsequently reindicted for the same offenses and his trial on those charges took place on November 3 and 4, 1987, (181 days after his May 6 first appearance on criminal charges).

Prior to trial, Tiedeman moved to dismiss his indictment for violation of SDCL 23A–44–5.1 (the 180 day speedy trial rule). The trial court reserved its ruling on the motion and the trial proceeded. The jury found Tiedeman guilty of one count of grand theft. Judgment and sentence were entered accordingly as were findings of fact, conclusions of law and an order denying Tiedeman's motion to dismiss the indictment.

## ISSUE

Whether the trial court erred in denying Tiedeman's motion to dismiss his indictment for violation of SDCL 23A–44–5.1 (the 180 day rule)?

## DECISION

SDCL 23A–44–5.1 provides:

The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal *within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment.* Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed. (Emphasis added).

Tiedeman contends that the 180 day period of SDCL 23A–44–5.1 began to run with his May 6, 1987, first appearance on criminal charges and, therefore, it lapsed on November 2, 1987. Thus, Tiedeman argues that his trial beginning on November 3, 1987, took place beyond the 180 day time period necessitating the dismissal of his indictment.

Tiedeman's position raises the broad issue of the effect of a dismissal and subsequent refiling of criminal charges on the running of the 180 day period (SDCL 23A–44–5.1). This is an issue of first impression in this court and is not controlled by our holding in *State v. Hoffman*, 409 N.W.2d 373 (S.D.1987) that a motion for good cause delay must be filed by state to toll the running of the 180 day period. *Hoffman*, does not address a case where a dismissal and subsequent refiling of criminal charges delays the advancement of the case to trial. Therefore, *Hoffman* is readily distinguishable from this case.

Given the absence of precedent from which to resolve the present question, we turn to interpretations of the speedy trial rules of our sister states for guidance. Although speedy trial rules as well as the general rules of criminal procedure may vary from state to state, some general observations can be drawn relative to common approaches for counting a speedy trial time period when a dismissal and refiling of criminal charges has taken place.

A compilation of cases addressing this issue appears in Annotation, *Application of Speedy Trial Statute to Dismissal or Other Termination of Prior Indictment or Information*, 39 A.L.R.4th 899 (1985). *See also, Curley v. State*, 299 Md. 449, 474 A.2d 502 (1984). Based upon our review of these cases we find that three general approaches exist for counting a speedy trial time period when a dismissal and subsequent refiling of criminal charges occurs. Some courts hold that the speedy trial time period commences with the filing of the first criminal charges and continues to run despite a dismissal and refiling of the charges (Tiedeman's view). Other courts hold that the speedy trial period is tolled during the time between a dismissal and refiling of charges. Finally, utilizing a third approach, some courts hold that a dismissal of criminal charges stops the speedy trial period and that it commences anew with the refiling of charges. Which of these three approaches is applied by a particular court in a particular case is often dependant upon two fundamental factors: (1) whether the dismissal of charges was at the instance of the prosecution or the defense; and (2) the reason for the dismissal.

In this instance, the first charges against Tiedeman were dismissed upon his own motion while subsequent charges were voluntarily dismissed on two occasions by state. Inasmuch as we determine that the first dismissal and refiling of charges is dispositive of this matter, we confine the following discussion to that action.

Tiedeman's June 3, 1987, motion to dismiss was granted due to state's inability (resulting from the nonappearance of its witnesses) to establish probable cause to bind Tiedeman over for trial. The Supreme Court of Pennsylvania has directly addressed the speedy trial effect of a dismissal of criminal charges at a preliminary hearing and a subsequent refiling of charges in *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981). Charges against Genovese were dismissed after his preliminary hearing due to Commonwealth's failure to establish a prima facie case against him. Genovese was subsequently recharged and bound over for trial on the refiled charges. The issue raised on appeal was whether the Pennsylvania speedy trial period stopped with the dismissal of charges and commenced anew with the refiling of charges or whether it continued to run throughout the dismissal and refiling of charges. In adopting the former approach, the Pennsylvania court gave consideration to society's interest in the effective prosecution of criminal cases and stated that its speedy trial rule was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the state. The court also considered the fact that Genovese had not been confined between the dismissal and refiling of charges. Moreover, the court noted that after dismissal the first charges were a nullity for all purposes including the speedy trial rule and, therefore, Genovese's prosecution was based only upon the refiled charges. Finally, the Pennsylvania court took particular note of the fact that there was no evidence in the record of a prosecutorial plan to avoid the mandate of the speedy trial rule. Therefore, the court concluded that the speedy trial period commenced anew with the refiling of charges against Genovese.

The Pennsylvania courts have, therefore, developed and utilized a two prong test for determining when the speedy trial period commences in a situation where criminal charges are dismissed and subsequently refiled. The rule is that the speedy trial period begins to run anew upon the refiling of criminal charges if: (1) the initial charges were properly dismissed, and (2) the record does not disclose evidence on the part of the state to circumvent the speedy trial rule. *Commonwealth v. Davies*, 342 Pa.Super. 318, 492 A.2d 1139 (1985). Charges are "properly dismissed" in this sense if they are dismissed by a competent magisterial or judicial authority who commits no error of law in doing so. *Id.* Further, a "proper dismissal" includes a dismissal for failure to make out a prima facie case at a preliminary hearing. *Id.*

The Illinois courts follow a rule similar to Pennsylvania's. They hold that when a defendant is discharged at a preliminary hearing, in the absence of a showing that the state has purposely secured that finding as an envasionary tactic, the speedy trial period does not continue to run after the dismissal and a new period begins when the defendant is subsequently recharged with the offense. *People v. Sanders*, 86 Ill.App.3d 457, 41 Ill.Dec. 453, 407 N.E.2d 951 (1980).

We are persuaded by the philosophical approach of the Pennsylvania and Illinois courts to the present issue and are convinced that it strikes an equitable balance between society's interest in the effective prosecution of criminal cases and the defendant's right to a speedy trial. Like the Pennsylvania court in *Genovese*, we note that all charges against Tiedeman were dismissed at his June 3 preliminary hearing and that he was not confined or held between that dismissal and his arrest on refiled charges. Further, we observe that the first charges filed against Tiedeman were not those on which he was ultimately convicted. The first charges were effectively terminated by their dismissal at the June 3 preliminary hearing. SDCL 23A-4-7, 23A-44-4.

Further, applying the two prong test of the Pennsylvania courts to this matter we observe: (1) the dismissal of the first charges against Tiedeman occurred on his own motion; (2) the charges were dismissed by a competent judicial authority; (3) there was no error of law committed in dismissing the charges; and (4) there is nothing in the record indicating that state sought the dismissal or purposely secured the dismissal in order to circumvent the 180 day rule (SDCL 23A–44–5.1). With specific reference to the fourth point, we note that on the date of Tiedeman's first preliminary hearing, 152 of the original 180 days remained in which Tiedeman could be brought to trial. Thus it is difficult to envision a surreptitious intent on state's part to secure the first dismissal of charges as a means of avoiding the sanctions of the 180 day rule.

Accordingly, we conclude that the 180 day period commencing with Tiedeman's May 6, 1987, first appearance stopped on June 3, 1987, when the charges against him were disposed of by dismissal. A second 180 day period commenced with Tiedeman's first appearance on refiled charges on June 24, 1987. Without considering the effect of the two subsequent dismissals, this second 180 day period did not lapse until December 21, 1987. Tiedeman's trial was completed on November 4, 1987, well within this second 180 day period. Thus, Tiedeman's contention concerning violation of the 180 day rule (SDCL 23A–44–5.1) must fail.

JUDGMENT IS AFFIRMED.

MORGAN, and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

There is very little language contained in the majority opinion to which I agree. A serious wound to precedent is created by the majority opinion in that it is erosive to our holding in *Hoffman,* and it appears to

ignore our most recent decision on the 180–day statute in *State v. Cooper,* 421 N.W.2d 67 (S.D.1988). In *Hoffman,* 409 N.W.2d at 375, we held: "To foster certainty and finality, we hold that a motion for a good cause delay *must be filed prior to the expiration of the 180–day period." Id.* (emphasis added; footnote omitted).

In *Cooper,* we held: "The State, under SDCL 23A–44–5.1, is required to dispose of criminal matters within 180 days and under *Hoffman, supra* is required to file a motion for good cause delay where they want to toll the time." *Cooper,* 421 N.W.2d at 70. In this case, the good cause for delay was not clearly substantiated and a motion was never filed. See PROCEDURAL HISTORY below.

Were we to strictly follow the *Hoffman* and *Cooper* precedent, surely this case should have been dismissed because a motion was not filed by the State of South Dakota, for good cause delay, prior to the running of the 180–day requirement. Quite obviously, as the State finds itself in the weak position of not having complied with the State statute, and being unable to bring itself within the holdings of either *Hoffman* or *Cooper,* the State must find a hole to "wiggle out." The hole, essentially, is "tolling." * Another cutting rationale creeps in: namely, that the State has not intentionally or purposely tried to evade the purposes of the statute (since when did the absence of bad faith surface as a defense to a failure to prosecute timely?). If subjective factors such as intent and good faith are advanced as reasons for compliance or noncompliance of the 180–day rule, we are down to examining a prosecutor's mind and not cold, hard facts. Review becomes examining the nebulous. It is the duty of the prosecution and the courts, not the defendant, to dispose of a case, to move it along, to bring it to trial, to bring it to finality. *United States v. Didier,* 542 F.2d 1182, 1187 (2d Cir.1976); *People v. Deason,* 670 P.2d 792 (Colo.1983). In *Commonwealth v. McLaughlin,* 338 Pa.Super. 615, 488 A.2d 63 (1985), the holding was mani-

---

* State cites many tolling holdings in other states; we have our own statute and this Court has ruled thereon. Why must we seek foreign jurisdictions to now guide us?

fest that the state or commonwealth must come forward and request an extension of time *before* the time under the rule has expired. Note the lackluster and lackadaisical action of the State, as set forth in the PROCEDURAL HISTORY, which I have set forth below.

However, there is a "wiggle-out" within the 180–day rule. It is called "good cause delay." In *Hoffman,* we expressed that the "180–day period may be tolled if State moves for and can show good cause for delay." *Hoffman,* 409 N.W.2d at 375. We further admonished that to foster certainty and finality, as I have mentioned above, this motion *must be filed prior to the expiration of the 180–day period.* No motion was filed herein by the State for "good cause delay." The record establishes charge and dismissal. Then, charge and dismissal, and for the third time, charge and dismissal. If, indeed, a State prosecutor is permitted to follow this course of action, full well knowing that this will consistently toll the 180 days, what restraints are upon his prosecutorial hand? The answer is: None. Let the prosecutor come forth with the *reasons,* in writing, for the delay (subjective intent and palaver unacceptable); let the trial court weigh upon these reasons; then, the trial court may adjudicate upon the propriety of the reasons.

There is no doubt that many factual scenarios can develop which will justify an extension of the 180–day rule. However, let the State comply with the rule and make a motion for "good cause delay." Spread the "good cause" on the printed page. In *State v. Kerkhove,* 423 N.W.2d 160, 164 (S.D.1988), decided April 27, 1988, we held:

> We urge trial courts to make *particularized findings* regarding causes and periods of attributable delay under the 180–day rule. We also urge trial courts to avoid the "carte blanche" type permission giving the state, i.e. "the time necessary to dispose of all criminal charges and related issues including trial." (Emphasis added.)

We have a 1987 factual appeal before us; obviously, the trial court did not know of our *Kerkhove* decision. Notwithstanding, *Kerkhove* is called to the reader's attention for this purpose: This Court has expressed, in the past, an intent to put some teeth in the 180–day rule. Too many detours can spoil a good road.

I concur in the result of this opinion for one reason, and one reason alone, and that is because, as the majority points out, the charges which defendant first faced were not the charges upon which he was ultimately convicted.

To illustrate my point, I confidently submit this concise chronology for an illumination of the case procedural history, believing it speaks for itself.

| PROCEDURAL HISTORY | DATE |
|---|---|
| Complaint Filed, Third-degree Burglary, Grand Theft | March 6, 1987 |
| First Appearance | May 6, 1987 |
| Complaint Dismissed, State's Witnesses Fail to Appear | June 3, 1987 |
| Complaint Refiled | June 5, 1987 |
| First Appearance | June 24, 1987 |
| Indictment Filed, Third-degree Burglary, Two Counts Grand Theft | July 17, 1987 |
| Complaint Dismissed, on June 5 Complaint | July 20, 1987 |
| Arraignment | July 27, 1987 |
| Indictment Dismissed, Absolutely No Reason Given in the Record | September 14, 1987 |
| Indictment Refiled | September 23, 1987 |
| Arraignment | October 1, 1987 |
| Trial Commenced | November 3, 1987 |
| Verdict Returned | November 4, 1987 |

House Bill No. 1055 was introduced in the 1988 Legislative Assembly by eight State Representatives, co-sponsored by three State Senators, on behalf of the Attorney General, to severely restrict the 180–day rule. Journal Index and Journal Corrections for S.D. Senate and House of Representatives, Sixty–Third Session, at 142 (1988). It had a stormy legislative history, passing in the House of Representatives but failing in the State Senate. Through these elected legislators, the people speak. Tattered and besieged, the 180–day rule is still alive. At the command post, I would stand and defend it. It has a worthy purpose.