COMMONWEALTH of Pennsylvania, Appellee

v.

Catherine Glovak THOMAS, Appellant.

Superior Court of Pennsylvania.

Submitted June 17, 2002.

Filed Dec. 31, 2002.

J. Lauson Cashdollar, Beaver, for appellant.

Dale M. Fouse, Asst. Dist. Atty., Beaver, for Com., appellee.

Before: STEVENS, J., KLEIN, J., and CERCONE, P.J.E.

CERCONE, P.J.E.:

¶ 1 Appellant, Catherine Glovak Thomas, appeals from the order of the Trial Court dismissing her petition which sought the scheduling of a new hearing on her appeal from a summary conviction. After review, we reverse and remand for a new trial *de novo.*

¶ 2 The Trial Court has set forth some of the relevant factual and procedural history of this case in its opinion as follows:

On March 22, 2001, the [Appellant] was cited with a summary offense, ... Cruelty to Animals, 18 Pa.C.S.A. § 5511[(c)].[1] [Appellant] was found guilty on April 17, 2001 at a hearing before a District Justice and sentenced to pay costs, a fine in the amount of $750.00 and undergo imprisonment for a period of sixty (60) days. She subsequently filed a Summary Appeal. The Summary Appeal hearing took place on November 29, 2001. Counsel [from the Public Defender's Office] appeared for the [Appellant], but [Appellant] failed to appear, and the Appeal was dismissed and remanded to the District Justice for execution of sentence.... [Appellant]'obtained new counsel, who filed a "Petition to Strike or Withdraw Order and Reset Matter for Hearing" [claiming that she never received notice of the Summary Appeal hearing.] On December 6, 2001, the [Trial] Court suspended the execution of sentence and scheduled a Hearing and Argument for December 27, 2001. [The hearing was continued until January 3, 2002.] At the hearing on January 3, 2002, the Commonwealth and the [Appellant] were given an opportunity to present witnesses and evidence concerning the mailing and receipt of the notice of the Summary Appeal hearing.

Trial Court Opinion, filed 3/22/2002, at 1–2.

¶ 3 At the January 3, 2002 hearing on Appellant's petition, the Commonwealth presented the testimony of an employee of the Beaver County Court Administrator's Office who was responsible for preparing and mailing summary appeal hearing notices. She testified generally as to the standard practices and procedures in Beaver County which existed for the preparation and mailing of such notices. N.T. Hearing, 1/3/2002, at 10–29. An employee of the Beaver County Courthouse mailroom also testified to the general procedures for receiving and mailing materials from other courthouse offices, and the procedures for handling returned letters. *Id.* at 62–70.

¶ 4 A notice of summary appeal hearing dated October 31, 2001, but which did not bear an official timestamp, was present in the Clerk of Courts' file and a copy of this notice was attached to the petition filed in this matter and admitted at the hearing as Exhibit C. This notice was addressed to a "Thomas Glovak Catherine" at 1119 Ninth Avenue, Beaver Falls, rear. *See* Petition filed 12/6/2001, Exhibit C. There is no written indication on this notice as to when or if it had ever been mailed.

¶ 5 Appellant's public defender testified at the January 3, 2002 hearing as well. He recounted that he had received a notice of the summary appeal hearing through the interoffice mail system of the Beaver County Courthouse. He acknowledged that his office does not inform clients such as Appellant of the time and place set for their summary appeal hearings. *Id.* at 59. Although counsel was present at the time of the hearing on November 29, 2001, when his client did not appear he did not present a defense, and the judge presiding over the hearing did not take evidence, but rather "comments were made for the record ... and the matter was disposed of." *Id.* at 58–59.

¶ 6 Appellant herself testified at the January 3, 2002 hearing. She recounted that at the time of the summary appeal hearing there were two (2) houses located at 1119 Ninth Avenue, Beaver Falls. *Id.*

---

**1.** Appellant was accused of having twenty-five (25) dogs and cats in her home under allegedly unsanitary conditions.

at 30, 48. As Appellant's house was located behind the other house, her house had the mailing address 1119 Ninth Avenue, rear. *Id.* at 30. Appellant testified to having previous difficulties with the person who lived in the house in front of hers, who had allegedly stolen things from her yard. *Id.* at 31. She also related that she had had considerable problems receiving her Social Security checks at that address for over a year. Since she had not received some of her checks, she had brought the matter to her postmaster's attention. *Id.* at 36. As a result of her difficulty in receiving the checks, she had to have them directly deposited into her bank account. *Id.* at 36. Additionally, Appellant attempted to offer other testimony that, while living at that address, she had not received a notice to appear as a witness in another criminal proceeding held in the Beaver County Court of Common Pleas, even though it had also been mailed to her at that address; however, the Trial Court disallowed that testimony as "too speculative." *Id.* at 38.

¶ 7 Appellant recalled that she had filed her appeal from her summary conviction on April 25, 2001, and, although she was told that a public defender would represent her, she was never contacted by anyone from the public defender's office. *Id.* at 32. She testified that after filing the appeal she called the Clerk of Courts office at the courthouse several times to inquire when her hearing was to be held. *Id.* at 33. Each time she was told that the hearing was not scheduled. *Id.* Appellant stated that she never, at any time, received any notice in the mail informing her that she was to appear on November 29, 2001, for the appeal hearing. *Id.* at 34. Appellant only learned of the hearing, which was held in her absence, by reading about it in the local newspaper the day after it had taken place. *Id.* at 35.

¶ 8 Immediately after reading about the hearing in the newspaper, she went over to the courthouse and contacted the public defender's office and district attorney's office and informed them that she had never received notice of the hearing. *Id.* at 35. She then sought private counsel who promptly filed the petition to reset the matter for another summary appeal hearing.

¶ 9 After consideration of the testimony taken at the January 3, 2002 hearing, the Trial Court dismissed Appellant's petition by order docketed January 29, 2002. In support of its order, the Trial Court made the following specific findings of fact:

> [T]he Commonwealth presented convincing evidence that the notice was mailed in accordance with the standard mailing procedures of the Court Administrator's Office and that, therefore, a presumption of receipt of notice of the Summary Appeal hearing is established. The [Trial] Court also found that the [Appellant] merely asserted lack of receipt of the notice and did not present adequate evidence to rebut the presumption of notice being received and, furthermore, that the Appellant was not prejudiced in any way by her absence since she was represented by counsel at the Summary Appeal hearing.

Trial Court Opinion, *supra*, at 2. The Trial Court then remanded the case to the District Justice for imposition of sentence. This timely appeal followed.

¶ 10 On appeal to our Court Appellant raises three (3) issues for our consideration:

1. Whether the trial court erred in determining that the Commonwealth had met the evidentiary predicate necessary for the application of the common law "mailbox rule."

2. Whether the trial court erred in determining that Appellant had not rebut-

ted the presumption that she had received notice of her hearing.

3. Whether Appellant's right to due process under the Fifth Amendment was violated when the trial court refused to allow her to present relevant testimony to rebut the presumption that she had received notice of her hearing.

Appellant's Brief at 4.

¶ 11 We conclude that Appellant's first issue is meritorious. With respect to that issue, Appellant argues that the Trial Court erred in applying the "mailbox rule" presumption of receipt. Specifically Appellant argues that the application of this presumption in this case required that the Commonwealth have provided proof that the notice of Appellant's summary hearing date was properly mailed. This, Appellant claims the Commonwealth failed to do. After careful review of the record in this matter, we are compelled to agree.

¶ 12 In reviewing Appellant's claim, we are guided by the principle that whenever "the evidence supports the factual findings of the trial court, we are bound by such findings [,and] we may reverse only if the legal conclusions drawn therefrom are erroneous." *Commonwealth v. Russell*, 445 Pa.Super. 510, 665 A.2d 1239, 1242 (1995), *appeal denied*, 544 Pa. 628, 675 A.2d 1246 (1996). It is clear, however, that "this Court is only bound by a trial court's factual findings if they are supported by the record." *Commonwealth v. Davies*, 342 Pa.Super. 318, 492 A.2d 1139, 1144 (1985).

¶ 13 The venerable common law "mailbox rule" has long been the law of this Commonwealth. This evidentiary rule, succinctly stated, provides that "the depositing in the post office of a properly addressed letter with prepaid postage raises a natural presumption, founded in common experience, that it reached its destination by due course of mail." *In re Cameron's Estate*, 388 Pa. 25, 130 A.2d 173, 177 (1957); *Beeman v. Supreme Lodge*, 215 Pa. 627, 64 A. 792 (1906). As the Supreme Court has noted: "The overwhelming weight of statistics clearly indicates that letters properly mailed and deposited in the post office are received by the addressees." *Meierdierck v. Miller*, 394 Pa. 484, 147 A.2d 406, 408 (1959). Thus, "evidence that a letter has been mailed will ordinarily be sufficient to permit a jury to find that the letter was in fact received by the party to whom it was addressed." *Shafer v. A.I.T.S.*, 285 Pa.Super. 490, 428 A.2d 152, 156 (1981) (citing *Berkowitz v. Mayflower Securities, Inc.*, 455 Pa. 531, 317 A.2d 584, 585 (1974)).

¶ 14 Also, our Court has held that "when a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed." *Christie v. Open Pantry Food Marts*, 237 Pa.Super. 243, 352 A.2d 165, 166–167 (1975). However, it is axiomatic that for the presumption of the receipt of a letter to be triggered, as a threshold evidentiary requirement, the party who is seeking the benefit of the presumption must adduce evidentiary proof that the letter was signed in the usual course of business and placed in the regular place of mailing. *Shafer, supra*, 428 A.2d at 156. "A presumption that a letter was received cannot be based on a presumption that the letter was mailed." *Commonwealth Department of Transportation v. Whitney*, 133 Pa. Cmwlth. 437, 575 A.2d 978, 979 (1990).[2]

2. Although our Court is not bound by decisions of the Commonwealth Court, we may elect to follow those decisions if we find the rationale of those decisions persuasive. *Hol-*

"A presumption cannot be based on a presumption." *Id.; See also Paul v. Dwyer*, 410 Pa. 229, 188 A.2d 753, 756 (1963) (where controverted factual issue exists as to whether letter has been mailed, there is no presumption applicable to this determination).

¶ 15 In the case at bar, the evidence adduced at the evidentiary hearing on Appellant's motion did not establish that the hearing notice setting the date for Appellant's trial had actually in fact been mailed, nor did it establish that this notice had been prepared in the ordinary course of business and placed in the regular place of mailing. As recounted above, at the hearing of January 3, 2002, an employee of the Beaver County Court Administrator's Office testified as to the *general practice* which existed in Beaver County for the preparation and sending out of all notices of summary appeal hearings. The employee testified as to how she prepares all hearing notices, by entering the case number assigned to the case by the Clerk of Courts into her computer which then automatically generates the hearing notice. She further testified that after she prepares such notices, she then has them delivered to the mailroom via tipstaff. She indicated in her testimony that she did not know if the notice of appeal hearing contained in the Clerk of Courts file was the actual notice sent in the case, but she opined that it was "consistent" with the type of notice that would ordinarily be generated. N.T. Hearing, 1/3/2002 at 11–12, 22.

¶ 16 Critically, however, the employee of the Court Administrator's Office admitted that she did not have any personal recollection of preparing a notice of Appellant's summary appeal hearing on October 31, 2001, or delivering such a notice to a tipstaff to place in the regular place of mailing on that day. *Id.* at 11–12, 17. Moreover, and most importantly, the employee acknowledged that there was no official record kept of any of the notices which had been prepared on October 31, 2001, nor was any record kept of the notices which had been prepared and given to the tipstaff for delivery to the mailroom on that day. *Id.* at 17, 23.

¶ 17 It was stipulated by the parties that all mail from the court administrator's office was brought to the mailroom by tipstaffs where it was metered and left for the postal service to pick up. *Id.* at 61. An employee of the Beaver County mailroom testified generally as to what happened in the event that a letter was returned by the postal service, namely that she would return it to the courthouse office from which it originated. She admitted that she had no recollection as to whether a letter addressed to Appellant had ever been returned to the courthouse. *Id.* at 67, 70. She also acknowledged that she did not keep track of the flow of mail from various offices to the mailroom. *Id.* at 68. Additionally, there were no county mailing records introduced at the hearing to show that this specific notice had been mailed to Appellant, nor were any other suitable records produced to show the mailing of the notice such as a certificate of mailing from the post office.

¶ 18 In sum, then, there was no testimony adduced at the evidentiary hearing held in this matter from any individual who had a personal recollection of mailing Appel-

*land v. Marcy*, 2002 PA.Super 381, n. 1, 2002 WL 31706861. (Pa.Super. Dec. 4, 2002) (*en banc*) (citing *Commonwealth v. Lewis*, 718 A.2d 1262, 1265 n. 10 (Pa.Super.1998), *appeal denied*, 558 Pa. 629, 737 A.2d 1224 (1999));

*Penn–Delco School District v. Bell–Atlantic Pa.*, 745 A.2d 14, 18, n. 6 (Pa.Super.1999), *appeal denied*, 568 Pa. 665, 795 A.2d 978 (2000).

lant's notice of her appeal hearing or who had a personal recollection of preparing the notice and placing it in the regular place of mailing. Neither was there produced at the evidentiary hearing any official county or postal records, that were kept in the ordinary course of business, which showed that this notice was in fact mailed to Appellant, or that this notice had been prepared and taken to the regular place of mailing. Under these circumstances we must agree with Appellant that the Commonwealth did not meet the evidentiary threshold for the application of the mailbox rule.

¶ 19 The Commonwealth, as the party which sought to invoke the mailbox rule presumption that Appellant received the notice of the hearing, had the burden of proof to show that the notice was in fact mailed, or that it had been prepared and placed in the regular place of mailing. *Shafer, supra.* This burden the Commonwealth did not meet. Merely producing an un-timestamped copy of a hearing notice contained in the Clerk of Courts file, and offering generic testimony as to the standard mailing procedures for summary appeal hearing notices in Beaver County was insufficient.

¶ 20 In *Commonwealth of Pennsylvania Department of Transportation v. Brayman Construction Corporation,* 99 Pa.Cmwlth. 373, 513 A.2d 562 (1986) the Department of Transportation (PennDOT) sought to establish that it had mailed a letter approving engineering drawings to one (1) of its contractors. As evidence in a hearing held before a fact finding board (the Board of Claims) PennDOT produced a copy of the letter found in their office file. PennDOT asserted that since an engineer testified that a copy of the letter was found in their office files "the letter must have been mailed since copies of letters are placed in the files only after

being mailed." *Id.* at 566. Our sister court soundly rejected that argument, and cogently and correctly reasoned: *"Proof of office filing procedures without proof that the letter was written in the regular course of business and was placed in the usual place of mailing* <u>*does not meet the burden to establish mailing and bring the mailbox rule into play.*</u>" *Id.* (emphasis supplied).

¶ 21 Similarly in *Shafer, supra* our Court ruled that circumstantial evidence which merely suggested that a letter had been mailed, but did not directly establish that fact, was not adequate to trigger the presumption that the letter had been received. In *Shafer* the defendant testified at trial that he had checked his own taped records, which he kept of the preparation of business letters, and they revealed that the plaintiffs' organization was mentioned on the tape as well as other groups to whom the defendant testified he knew had received copies of a letter which he had sent out. The defendant merely assumed that because the plaintiff's name was on the tape, it had received a copy of the letter. Our Court ruled this evidence was insufficient, by itself, to show that "a letter to [the plaintiff] was actually written, signed and placed in the regular place for mailing." *Id.,* 428 A.2d at 156; *See also Litster v. Utah Valley Community College,* 881 P.2d 933 (Utah Ct.App.1994), *cert. denied,* 892 P.2d 13 (Utah 1995) (holding that evidence of office custom by itself is insufficient to show that a document has been mailed, since courts have uniformly required that there be direct evidence that the document in question has been prepared) (quoting *Shafer* and collecting cases from multiple jurisdictions).

¶ 22 The Commonwealth Court again reached the same conclusion in *Whitney, supra.* In *Whitney,* a driver's licensee challenged his license suspension on the

basis that a delay in the suspension was attributable to PennDOT. PennDOT claimed it never received a copy of the trial court order suspending the license. Both the licensee and PennDOT stipulated that notice of the trial court's order was, as a matter of ordinary practice, sent to both PennDOT and the licensee after the conclusion of a case. Based on this stipulation, the trial court ruled that there was a presumption that both counsel for the licensee and counsel for PennDOT had received a copy of the order at the conclusion of the licensees' hearing. *Whitney, supra,* 575 A.2d at 979.

¶ 23 On appeal, PennDOT argued that application of the presumption of receipt by the trial court was erroneous under the circumstances, since there was no evidence introduced that the copy of its order had actually been mailed. The licensee argued that evidence of the business custom alone was sufficient to establish that the order had been mailed. The Commonwealth Court soundly rejected this conclusion. As discussed, *supra,* the Court held:

> [I]n the case at hand, there is no evidence that the notice of the order was properly prepared and placed in the regular place of mail. Furthermore, Licensee's position would require us to presume that the notification of the order was properly mailed in order to presume that the letter was actually received. A presumption that a letter was received cannot be based upon a presumption that the letter was properly mailed. A presumption cannot be based on a presumption.

*Id.*

¶ 24 Thus, there must be some direct evidence either that an item was prepared and deposited in the mail, or prepared and placed in the usual place of mailing in order for the presumption of receipt of that item to apply. *See e.g.*

*Samaras v. Hartwick,* 698 A.2d 71, 73–74 (Pa.Super.1997) (computer generated Bucks County mailing records showing that a notice of a case termination was sent to attorney of record was sufficient to raise the rebuttable presumption of the "mailbox rule" that the notice was received by the attorney); *Donegal Mut. Ins. Co. v. Pennsylvania Dept. of Insurance,* 694 A.2d 391, 393 (Pa.Cmwlth.1997) (certificates of mailing and computer printout showing dates that notices of cancellation had been mailed sufficient to establish presumption that cancellation notices were received). Simply adducing testimony as to general office procedures for preparing items and mailing them is manifestly insufficient to meet the evidentiary threshold for raising the presumption that a specific individual received a specific mailed item. Evidence of how an office mails letters or notices, generally, does not demonstrate that an individual letter or notice was in fact mailed on one (1) particular occasion. The question of whether an individual item was actually prepared and mailed is a purely factual determination and, as the Supreme Court has made clear, there is no presumption applicable to the resolution of such a question. *Paul v. Dwyer, supra.*

¶ 25 In the case *sub judice* there was simply no direct evidence that Appellant's hearing notice had either been prepared and actually mailed, or that the hearing notice had been prepared and placed in the regular place of mailing; thus, the presumption of receipt was not triggered in this instance. We cannot countenance the presumption that Appellant received the notice of her summary appeal hearing under these circumstances, because such a presumption would improperly be based solely on a presumption that the notice was prepared and then mailed. *Whitney, supra.* The order of the Trial Court is

therefore reversed and this matter is remanded for a new trial *de novo*.[3],[4]

¶ 26 Order reversed. Case remanded for a new trial *de novo*. Jurisdiction relinquished.

¶ 27 Judge STEVENS notes dissent.

**3.** Additionally, we note that if a mailing is not addressed correctly our Court has held that the presumption of receipt cannot apply. *See Higgins v. Marucca*, 159 Pa.Super. 405, 48 A.2d 48, 49 (1946) (where letter in question was mailed and addressed to Rose Maruca and Rene Maruca, but defendants were actually named Ross S. Marucca and Jennie Marucca, "since the letter was improperly addressed, there is no presumption that it was received by the defendants[.]"); *Cohen Salvage v. Eastern Electric*, 205 Pa.Super. 26, 206 A.2d 331, 333 (1965) (where mailed purchase order form was incorrectly addressed to a Julian Costen instead of Julian Cohen, presumption of receipt did not apply since there was no such person in the case). Here, Appellant's proper legal name, as she listed it on the notice of appeal, was Catherine Glovak Thomas. Nevertheless, the notice of hearing contained in the file of the Clerk of Courts is addressed to a "Thomas Glovak Catherine."

As the employee of the court administrator's office testified, her practice was to put the same name on the mailing labels as that which appeared on the hearing notice. N.T. Hearing, *supra*, at 15. Thus, even if we assume, for the sake of argument, that the notice contained in the Clerk of Courts' file had been sent out, it was clearly misaddressed since there is no such individual in this case with the surname Catherine and the very common first name of Thomas; hence, the presumption of receipt would not apply for that reason as well.

**4.** Having found Appellant's first issue meritorious and necessitating reversal and remand for a new trial, we need not address her two (2) remaining issues. *Commonwealth v. Metzer*, 430 Pa.Super. 217, 634 A.2d 228, 235, n. 6. (1993)