STATE OF NEBRASKA, APPELLEE, V. JAMES DEAN
WELSH, APPELLANT.

332 N.W.2d 685

Filed April 15, 1983. No. 82-403.

David T. Schroeder, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

The appellant, James Dean Welsh, was convicted by a jury in the District Court for Sheridan County, Nebraska, of theft by unlawful taking or disposition, contrary to Neb. Rev. Stat. § 28-511(1) (Reissue 1979). Following a presentence investigation, Welsh was ordered to pay a fine of $2,000 plus the costs of prosecution. Welsh has appealed to this court, setting out a number of assignments of error. We have thoroughly examined the record and conclude that Welsh's assignments are without merit. Therefore, the conviction, judgment, and sentence should in all respects be affirmed.

Before proceeding to examine the assignments of error, a brief statement of facts is necessary. The record reveals that in March of 1981 Welsh entered into an oral agreement with J. Conrad Bauer in which Welsh agreed to sell Bauer a 10-tower pivot irrigation system for a total purchase price of $36,000. This agreement was later modified by changing the sale to a 7-tower pivot irrigation system at an agreed price of $28,500. On April 22, 1981, Bauer gave Welsh a downpayment of $7,200. About June

16, 1981, Welsh delivered the 7-tower system to Bauer and received payment from Bauer of $18,300, leaving a balance of $3,000 due and owing. In July of 1981 Welsh submitted a bill to Bauer for the balance due, plus an additional $1,586 for test pumping a well and one other item not here involved. Bauer refused to pay the balance due and a dispute developed. Welsh claimed that in August of 1981 he conferred with an attorney concerning possible repossession of certain of the property in the possession of Bauer. Welsh concedes that on November 24, 1981, while accompanied by some employees, he removed parts from the pivot irrigation system previously sold to Bauer and returned them to his shop. He did not notify Bauer that he had taken them at that time. Bauer reported the apparent theft of the parts, and an investigation by the county sheriff and a member of the Nebraska State Patrol followed. On December 1, 1981, the Nebraska state patrolman interviewed Frances Jackson, a coowner of the land upon which the system had been installed. She reported to the patrolman that on November 30, 1981, Welsh told her that he had taken the parts in question. Later that afternoon the sheriff and the patrolman went to Welsh's place of business in Hay Springs, Nebraska, to discuss the matter with Welsh. After attempting to locate Welsh, they entered a part of the building open to the public. They were still unable to locate Welsh. After calling out for him several times, the patrolman opened a closed door leading to a backroom and saw what he believed to be the missing parts. Still unable to locate Welsh, they left the premises.

The following day, on December 2, 1981, Welsh telephoned the sheriff and told him that he had the irrigation equipment and intended to sell it to pay the balance due. On December 3, 1981, the patrolman returned to Welsh's place of business to interview Welsh. Welsh agreed to walk to the patrol car but refused at that time to give the officer a taped

statement. The patrolman then advised Welsh of his *Miranda* rights, and then advised him that he was investigating a theft that had been reported to him by Bauer. Welsh told the officer that he, Welsh, had a signed contract with Bauer, giving Welsh an interest in the missing parts. When the patrolman asked Welsh if he had obtained a court order before repossessing the parts, Welsh admitted that he had not. The officer then asked Welsh if he could see the contract, and Welsh produced a photocopy of the contract. The patrolman asked for permission to photograph the equipment, but Welsh refused to allow him to do so without a search warrant.

On December 4, 1981, the patrolman submitted an affidavit to the county court for Sheridan County, Nebraska, seeking a search warrant. The affidavit alleged that the patrolman had received information from the sheriff of Sheridan County, Nebraska, concerning the theft of the equipment; that the patrolman had interviewed Bauer and been advised that Bauer had purchased the equipment from Welsh; that the patrolman had talked to Welsh on December 3d and Welsh told the patrolman that he had taken the parts; that the patrolman asked Welsh if he could photograph the parts, and that while Welsh told the patrolman that the parts were present within his business premises, the patrolman could not photograph them and would not be permitted to look at the parts unless or until the patrolman produced a search warrant. The affidavit further recited that 3 days earlier, on December 1, the patrolman and the sheriff observed the parts at Welsh's place of business. The affidavit finally recited that on December 4, 1981, the patrolman interviewed Bauer, who told him that he, Bauer, had not signed any written contract with Welsh and that the signature on the contract was forged. Based upon the allegations of the affidavit, a search warrant was issued and the missing parts were found in Welsh's place of business. In fact, they were in the same lo-

cation that the patrolman and the sheriff had observed them on December 1st. The parts were seized and removed from the premises and an information was filed charging Welsh with theft by unlawful taking pursuant to § 28-511(1).

Welsh's first assignment of error is that the trial court should have sustained his motion to suppress because the warrantless search made by the patrolman and the sheriff on December 1, 1981, was in violation of Welsh's fourth amendment rights. Welsh maintains that this illegal search on December 1, 1981, not only affected the admissibility of the parts seized on December 4 but, as well, tainted all of the evidence obtained by the patrolman, including Welsh's own statements given to the patrolman, on December 3, 1981. Even if we concede that the officer's entry into Welsh's closed area without a search warrant was in violation of his fourth amendment rights (see *See v. City of Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967)), Welsh's claim of error is without merit. While it is true that the U.S. Supreme Court decision in *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), not only requires the suppression of the illegally obtained evidence but the "fruit of the poisonous tree" as well, not all evidence obtained is considered to be "fruit of the poisonous tree," and such evidence may be admitted if there is sufficient independent basis for the discovery of the evidence. In *Wong Sun* the U.S. Supreme Court specifically made that distinction when it observed that the constitutional question under the fourth amendment must be examined in light of whether the evidence to which objection is made has been come at by exploitation of the illegally obtained evidence or, instead, by means sufficiently distinguishable to be purged of the primary taint. In practice, the U.S. Supreme Court has declined to adopt a per se or "but for" rule that would make inadmissible any evidence which somehow came to light through a

chain of causation that began with an illegal activity. See *Brown v. Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). See, also, *State v. Anderson and Hochstein,* 207 Neb. 51, 296 N.W.2d 440 (1980). Specifically, in *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920), *reaff'd* in *Nardone v. United States,* 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939), the U.S. Supreme Court held that facts improperly obtained may nevertheless be admissible in evidence if knowledge of the facts is gained from an independent source. The application of the independent source rule in the context of a search warrant does not offend the underlying purpose and objectives of the exclusionary rule. See *United States v. Giordano,* 416 U.S. 505, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974). In a long line of cases both the U.S. Supreme Court and other federal courts called upon to examine this question have held that where an affidavit used for the purpose of obtaining a search warrant includes both illegally obtained facts as well as facts derived from independent and lawful sources, a valid search warrant may issue if the lawfully obtained facts, considered by themselves, establish probable cause to issue the warrant. *United States v. Giordano, supra*; *Grimaldi v. United States,* 606 F.2d 332 (1st Cir. 1979), *cert. denied* 444 U.S. 971, 100 S. Ct. 465, 62 L. Ed. 2d 386; *United States v. Marchand,* 564 F.2d 983 (2d Cir. 1977); *United States v. Plotkin,* 550 F.2d 693 (1st Cir. 1977), *cert. denied* 434 U.S. 820, 98 S. Ct. 61, 54 L. Ed. 2d 76; *United States v. Armedo-Sarmiento,* 545 F.2d 785 (2d Cir. 1976); *United States v. DiMuro,* 540 F.2d 503 (1st Cir. 1976), *cert. denied* 429 U.S. 1038, 97 S. Ct. 733, 50 L. Ed. 2d 749 (1977); *United States v. Koonce,* 485 F.2d 374 (8th Cir. 1973); *James v. United States,* 418 F.2d 1150 (D.C. Cir. 1969).

An examination of the search warrant in this case discloses that even if the observations made by the officers are disregarded, there were more than

ample independent facts contained in the affidavit which would have justified the court in granting a search warrant. Specifically, there is the statement, "The affiant then asked Dean Welsh if he could photograph the parts at the place of business owned and controlled by Dean Welsh in Hay Springs, Nebraska. Dean Welsh told the affiant the parts were present within his business premises, but he told affiant that he would not allow them to be photographed and would not allow affiant to look at them until or unless affiant produced a search warrant." This statement alone would have been sufficient to have established probable cause for the court to issue the warrant in question.

Furthermore, the record is clear that the statements made by Welsh to the state patrolman concerning the location of the parts in question were voluntarily made by Welsh at a time when Welsh clearly was not in custody. The statement by Welsh to the officer was not in response to any questioning by the officer, nor did the officer act in any manner that would reasonably elicit such an incriminating response from Welsh. Welsh clearly initiated the conversation in question and volunteered the information.

Welsh argues that his statements were inadmissible as being "fruit of the poisonous tree." The difficulty with that position, however, is that at the time that Welsh made the statements to the state patrolman, he was not aware that the patrolman and the sheriff had already seen the equipment. It was not until after Welsh advised the patrolman that he had the equipment and the officer asked if he might photograph it that Welsh inquired as to how the officer knew the equipment was in the building. Welsh's statements to the officer upon which the search warrant was based were clearly voluntarily made by Welsh, independent of any knowledge the officer had, and they cannot, under any circumstance, be considered to be fruit of a poisonous tree. *People v.*

*Johnson*, 70 Cal. 2d 541, 450 P.2d 865, 75 Cal. Rptr. 401 (1969), *cert. denied* 395 U.S. 969, 89 S. Ct. 2120, 23 L. Ed. 2d 758; *Wickline v. Slayton*, 356 F. Supp. 140 (E.D. Va. 1973). When one disregards that portion of the affidavit establishing the officer's personal observation of the parts, there still remain more than sufficient facts justifying the granting of the search warrant. The trial court was correct in refusing to suppress the statements made by Welsh and the parts obtained by reason of the lawfully issued search warrant.

Welsh further argues that the verdict was contrary to the law as well as to the facts. Welsh admitted that he took the parts and admitted he intended to deprive Bauer of the use of the parts until he received payment. His sole defense to the charge was his belief that he was able to repossess it under the terms of a sales contract. However, it was shown that Bauer had never signed the contract and that, in fact, Welsh had forged his signature on the document. If the jury believed all of that, there was sufficient evidence to justify its finding Welsh guilty of the crime charged. We have oftentimes held that in reviewing a criminal case this court will not set aside the verdict of guilty if, taking the view most favorable to the State, there is sufficient evidence to support the verdict. See *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980). Welsh's assignment therefore, concerning the sufficiency of the evidence, is without merit.

We have examined the balance of Welsh's assignments of error and find them all to be without merit. The judgment of the trial court and the sentence are in all respects correct and must be affirmed.

AFFIRMED.