**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Joseph P. KERKHOVE, Defendant and Appellant.**

No. 15529.

Supreme Court of South Dakota.

Argued Sept. 1, 1987.

Decided April 27, 1988.

Richard Dale, Asst. Atty. Gen., Pierre, Roger R. Gerlach, McCook County States Atty., Salem, for plaintiff and appellee.

Russell D. Kading and Kyle L. Engel (on brief) of Moore, Rasmussen, Kading & McGreevy, Sioux Falls, for defendant and appellant.

TSCHETTER, Circuit Judge.

Joseph K. Kerkhove (Kerkhove) was convicted of the first degree murder of Sharon Kerkhove (Sharon) his former wife. The trial court imposed the sentence of life imprisonment. Kerkhove appeals. We affirm.

On February 21, 1986, Sharon's body was found in her residence. Sharon's death was attributed to "manual strangulation." An autopsy further disclosed that Sharon suffered blows to the top of her head and face. Kerkhove was charged

with her murder and arrested on February 22, 1986. He was indicted by a McCook County grand jury on February 26 and arraigned on March 3, 1986. Jury selection began on September 16, 1986. The verdict was returned on September 30, 1986 and sentence passed on October 3, 1986.

Kerkhove raises three issues on appeal:

I. Did the trial court err in ruling that certain hearsay testimony was admissible under the "residual exception" (SDCL 19–16–35)?

II. Did the trial court err in allowing certain prior bad acts evidence to be admitted for the limited purpose of showing identity, motive and premeditated design (SDCL 19–12–5)?

III. Did the trial court err in allowing an extension of the 180–day rule (SDCL 23A–44–5.1)?

I.

HEARSAY

A pre-trial hearing was held to determine whether the trial court would admit certain hearsay evidence under SDCL 19–16–35.[1] State gave Kerkhove prior notice of its intention to offer the evidence.

▊ The trial court considered and admitted an affidavit of Sharon's, which had been filed in the Kerkhove divorce action. This affidavit was dated October 15, 1985, approximately four months before Sharon's death. The trial court found that the affidavit bore a "sufficient indicia of reliability" to warrant its admission. The trial court considered the criteria set forth in *State v. Luna*, 378 N.W.2d 229 (S.D.1985), and found that this principal piece of documentary hearsay was highly similar to the

1. SDCL 19–16–35 provides:
A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that
(1) the statement is offered as evidence of a material fact;
(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

written hearsay (divorce affidavit) approved by the *Luna* court. There are distinguishing characteristics between the *Luna* affidavit and Sharon's affidavit. The similarities in the two documents, however, greatly outweigh the differences. Both were divorce affidavits and each was drawn under the supervision of an attorney. (In *Luna*, the document was drawn by an attorney; in this case it was drawn by Sharon, the declarant-victim, and notarized by her attorney.) Each related, in part, to the use of physical violence upon their spouse by the respective defendants.

The hearsay elicited from witnesses LaVonne Schmeichel, (Schmeichel) Marjorie Finley, (Finley) Michael Unke, (Unke) Marlene Wintemute, (Wintemute) and Mark Norris (Norris) related to the issue of Kerkhove's identity. Schmeichel testified to an incident of choking. Finley and Unke testified that Kerkhove held Sharon down by the throat and threw her off the porch. Wintemute testified that Kerkhove broke down the door to Sharon's apartment. Norris testified that Kerkhove held Sharon's mouth shut. Each witness except Norris testified that Kerkhove threw the contents of a drink glass in Sharon's face on New Year's Eve 1986.

■ The trial court was not clearly erroneous in admitting these statements. A duly noticed hearing was held out of the presence of the jury. The trial court determined that the statements had equivalent circumstantial guarantees of trustworthiness. The declarations regarding choking were evoked from Sharon in response to an inquiry directed to her. Likewise, inquiries relating to bruises on Sharon's neck and face caused her to assert that Kerkhove had caused these bruises. In a homicide, where the victim died of manual strangulation, the relevance and materiality of evidence of prior choking cannot be doubted. Kerkhove's other acts relate to his harsh physical treatment of Sharon and are also material and relevant to show Kerkhove's

modus operandi and intent as well as to point to the identity of the ultimate assailant. The trial court applied the second criteria of SDCL 19–16–35, heard the testimony of the witnesses in question, and determined that the hearsay declarations were more probative on the points offered than any other procurable evidence.

■ State satisfied the prior notice requirement set forth in SDCL 19–16–35(3). While the furnishing of Sharon's affidavit to the defense could have been more expeditiously handled, the trial judge did offer Kerkhove additional time if this tardiness caused any preparatory difficulties. Kerkhove did not avail himself of this offer.

Under the *Luna, supra,* standard, the trial court was not clearly erroneous in admitting either the hearsay affidavit or hearsay statements.

## II.

### PRIOR BAD ACTS

The trial court permitted the evidence of prior bad acts under SDCL 19–12–5.[2] The acts introduced include those acts testified to under SDCL 19–16–35. In addition, the trial court allowed testimony about Kerkhove's removal from Sharon's apartment on September 26, 1985. This removal was effected by two deputy sheriffs who had been telephonically contacted by Sharon. Sharon had tried to get Kerkhove to leave for two hours before telephoning the sheriff's office. The trial court also allowed testimony of several telephone conversations where Kerkhove shouted obscenities at Sharon.

Before admitting prior "bad acts" the court must determine:

1. That the proffered evidence is relevant and;

2. That the probative value of the evidence exceeds its prejudicial effect.

---

**2.** SDCL 19–12–5 provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*State v. Thomas,* 381 N.W.2d 232 (S.D. 1986); *State v. Reutter,* 374 N.W.2d 617 (S.D.1985).

In *State v. Johnson,* 316 N.W.2d 652, 654 (S.D.1982) this court stated that "[a]ny fact that tends to connect an accused with the commission of a crime is relevant and has probative value." The *Johnson, supra,* court continued:

> Two of the principal factors bearing upon the admissibility of evidence of other crimes are the sequential relationship between the offenses and modus operandi employed. Where the incidents are close in time and similar in modus operandi, evidence of other crimes is frequently admissible on, among other things, the question of defendant's identity.

316 N.W.2d at 655.

The assaults and other abuse which were testified to began in the summer of 1985 and continued until just prior to February 8, 1986.[3]

█ Kerkhove's acts, which were testified to, occurred both before and after the Kerkhove divorce was granted. They occurred during a period of approximately six months before Sharon's murder. The acts are close in time and similar in nature. They bear on the issues of identity, modus operandi and intent. (See *Johnson, supra.*)

In considering the issue of remoteness, courts consider "[w]hether prior acts are too remote most realistically depend on their nature." *State v. Wedemann,* 339 N.W.2d 112, 115 (S.D.1983). The nature of Kerkhove's acts, a series of assaults steadily increasing in severity until Sharon was finally murdered, strengthen the grounds for allowing the prior acts testimony.

Kerkhove denied participating in Sharon's murder. Therefore, identity is in issue. Kerkhove's prior assaultive behavior is highly probative of his motive and identity as well as being a link in the chain of evidence relating to his modus operandi.

The prejudicial effect of the evidence "does not mean damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *State v. Holland,* 346 N.W.2d 302, 309 (S.D.1984).

The admission of other acts was within the sound discretion of the trial court. There was no abuse of discretion.

### III.

### 180–DAY RULE

The final issue is whether the trial court erred in permitting an enlargement of the time prescribed under SDCL 23A–44–5.1,[4] the 180–day rule.

Kerkhove appeared before a judicial officer on March 3, 1986. This appearance triggered the 180–day period. Absent "good cause for delay," State's dispositional time expired on August 29, 1986. On August 22, 1986, State moved to exclude certain periods of time from the 180–day period. The motion shows that Kerkhove's counsel was served by mail on August 22. The motion was heard on September 4. The motion acknowledged that the trial date, September 16, would be after the 180–day period prescribed by SDCL 23A–44–5.1. The motion was premised on two asserted areas of delay attributable to Kerkhove:

---

3. Witness Wintemute testified that on February 8, 1985, witness noticed "faded black and blue marks on her (Sharon's) neck." Wintemute testified:

> "Q: And did she tell you where she got those marks on her neck from?
> A: Yes.
> Q: And what did she say?
> A: She got 'em from her ex-husband (Kerkhove). He tried to strangle her."

Wintemute further testified that Sharon told him that she was afraid that Kerkhove was going to kill her.

4. SDCL 23A–44–5.1 provides:

> The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed.

1. On May 1, 1986, Kerkhove made a motion for change of venue. This motion was heard and ultimately granted.
2. On July 17, 1986, Kerkhove moved to extend the time within which additional discovery could be completed and to allow a suppression motion.

The trial court found, after hearing, that good cause appeared to enlarge the 180–day period prescribed by SDCL 23A–44–5.1. We review to determine whether this finding is clearly erroneous. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). We do not have a firm conviction that a mistake has been made. *Hobelsberger, supra.* By his own motion, Kerkhove requested extension of time for filing motions. He likewise requested a change of venue. The trial court granted each of these motions. Each of these motions granted Kerkhove additional time, particularly the motion for extension of time to file motions. Under these circumstances, it can hardly be said that the trial court's determination was erroneous. The period of time between expiration of the 180–day period to commencement of trial was less than three weeks. Particularized periods of time were not attributed to the two delay causing areas (1. venue, and 2. extension of open time re: additional discovery.) Thus, three factors militate to require affirmation of the 180–day question:

(1) Short period of override (three weeks).

(2) Two areas of cause for delay were shown.

(3) Motion and notice re: hearing on defense request for extension predated the expiration of the 180–day period.

We urge trial courts to make particularized findings regarding causes and periods of attributable delay under the 180–day rule. We also urge trial courts to avoid the "carte blanche" type permission giving the state, i.e. "the time necessary to dispose of all criminal charges and related issues including trial."

Affirmed.

MORGAN, A.C.J., HENDERSON and MILLER, JJ., and TUCKER, Circuit Judge, concur.

TSCHETTER, Circuit Judge, sitting for WUEST, C.J., disqualified.

TUCKER, Circuit Judge, sitting for SABERS, J., disqualified.