**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Dean A. LOWTHER, Defendant and Appellant.**

No. 15984.

Supreme Court of South Dakota.

Argued Oct. 13, 1988.

Decided Jan. 11, 1989.

Rehearing Denied Feb. 17, 1989.

on the brief, Pierre, for plaintiff and appellee.

James E. McCulloch, Vermillion, for defendant and appellant.

WUEST, Chief Justice.

Defendant, Dean Lowther, appeals his conviction of second degree arson and burning to defraud an insurer, contrary to SDCL 22–33–2[1] and SDCL 22–33–4,[2] respectively. We affirm.

On January 1, 1986, fire destroyed defendant's mobile home located in Vermillion, South Dakota. A subsequent investigation by Deputy State Fire Marshall Darrell Fodness (Fodness) and Vermillion Fire Chief Doug Brunick (Brunick) determined the cause of the fire to be a small electric fan. During this investigation, defendant's fire-damaged mobile home was searched, physical evidence was seized, photographs were taken and witness statements were obtained. Defendant cooperated with the investigative efforts by guiding Fodness and Brunick through the premises and by answering all questions. Defendant subsequently notified his insurer of the fire and was compensated for his losses.

Defendant purchased another mobile home in Vermillion shortly thereafter. This mobile home was also destroyed by fire on the morning of December 31, 1986. Brunick suspected arson and promptly notified Fodness and the Vermillion Police Department. On the afternoon of December 31, 1981, Brunick and Detective Al Hoff (Hoff) searched the fire-damaged mobile home for evidence revealing the cause of the fire. They seized carpet and floor samples along with other physical evidence and again took photographs. This search was conducted without a warrant. Defendant was notified of the investigation and arrived at the scene shortly after the search began. He then voluntarily accompanied Hoff to the police station for questioning.

Janine Kern Asst. Atty. Gen., Robert Hopper and Michael Hanson, Legal Interns, Roger A. Tellinghuisen, Atty. Gen.,

1. Under SDCL 22–33–2, "[a]ny person who intentionally sets fire to or burns or causes to be burned any occupied structure under circumstances which would not amount to arson in the first degree is guilty of arson in the second degree. Arson in the second degree is a Class 2 felony."

2. SDCL 22–33–4 provides:
   Any person who with intent to injure or defraud an insurer sets fire to or burns or causes to be burned any real or personal property of any kind, whether the property of himself or of another, which property is insured against fire, is guilty of a Class 4 felony.

Brunick and Fodness reentered the premises on January 2, 1987. They again seized physical evidence including an electric blanket. This search was also conducted without a warrant.

Defendant was indicted by a Clay County Grand Jury on two counts of first degree arson[3] and two counts of burning to defraud an insurer on January 19, 1987. These charges arose out of the fires which destroyed his two mobile homes. Defendant appeared on this indictment on January 23, 1987.

On May 26, 1987, the parties appeared before the Honorable E.W. Hertz for a hearing on a number of motions. Among defendant's motions granted by the trial court during this hearing were (1) a motion to sever for trial Counts I and II from Counts III and IV[4] and (2) a motion to require the state to set forth all independent corroborating evidence of criminal activity before introducing any admissions which may have been made by defendant. The trial court also ruled that evidence of the January fire could be introduced as a prior bad act at the trial for the fire occurring in December, even though the counts relating to the two fires had been severed.

A second motions hearing was held on May 29, 1987. During this hearing, the trial court granted defendant's motion to suppress all evidence obtained as a result of the searches of defendant's two mobile homes. The trial court also suppressed any observations made by Brunick during an examination of the premises with an insurance investigator. At the conclusion of this hearing, the trial court, on its own motion, dismissed the indictment without prejudice because the evidence was insufficient to instruct the jury on first degree arson.

On June 23, 1987, defendant was reindicted on two counts of second degree arson and two counts of burning to defraud an insurer. He was arraigned on June 26, 1987, at which time the trial court was informed that defendant's bond was still posted from the first indictment.

The state and defendant, having refiled all of the motions presented after the first indictment, again appeared before the Honorable E.W. Hertz for a motions hearing on July 29, 1987. The trial court again granted defendant's motion for severance of Counts I and II from Counts III and IV. The trial court also ruled that the state was prohibited from eliciting any admissions against interest made by defendant before introducing all independent corroborating evidence of the fires.

In response to defendant's renewed suppression motions, the state called Brunick and Fodness to testify regarding the searches conducted after both fires. The state also called an insurance investigator to testify regarding the investigation of the December fire. After considering all the evidence and testimony, the trial court again granted defendant's motion to suppress the evidence obtained pursuant to the searches conducted after the December fire. The trial court, however, denied defendant's motion to suppress the evidence obtained after the January fire. In so doing, the trial court rejected defendant's contention that this issue had been finally determined at the previous motions hearings. Defendant's motion to suppress evidence seized pursuant to a search warrant issued on May 30, 1987, was also denied. This evidence was obtained from the mobile home damaged by the December fire.

Defendant also filed a motion to dismiss for violation of SDCL 23A–44–5.1,[5] the so-

---

3. "Any person who intentionally sets fire to or burns or causes to be burned any occupied structure, knowing the same to be occupied at the time, is guilty of arson in the first degree. Arson in the first degree is a Class 1 felony." SDCL 22–33–1.

4. Counts I and II of the indictment relate to the December fire and Counts III and IV relate to the fire occurring in January.

5. SDCL 23A–44–5.1 provides:
   The prosecution shall dispose of all criminal cases by plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within

called 180–day rule. The trial court denied this motion, reasoning that the indictment of second degree arson constituted a new charge against defendant. Therefore, a new 180–day period began upon his first appearance on June 26, 1987.

Defendant was convicted on Counts I and II of the indictment (December fire). He was sentenced to five years imprisonment in the state penitentiary for second degree arson and two and one-half years imprisonment for burning to defraud an insurer, said sentences to run concurrently.

On this appeal, defendant raises six issues: (1) whether the trial court properly denied his motion to dismiss for violation of SDCL 23A–44–5.1; (2) whether the trial court properly relitigated facts and issues during the motions hearing on July 29, 1987, after the same facts and issues had been considered at motions hearings on May 26 and May 29, 1987; (3) whether it was proper for the trial court to sever for trial Counts I and II from Counts III and IV and yet allow evidence regarding the severed counts to be used at trial as evidence of other acts; (4) whether defendant's extrajudicial statements relevant to the January fire were properly admitted by the trial court; (5) whether the trail court erred in denying defendant's motion to suppress evidence seized after the January fire; and (6) whether the search warrant issued on May 30, 1987, was valid.

In his first contention, defendant claims that the 180–day period prescribed by SDCL 23A–44–5.1 began to run from the date of his first appearance before the honorable trial judge on the first indictment. He further contends that this period was not tolled by the trial court's dismissal of the indictment and that it continued to run from May 29, 1987, through June 23, 1987, even though no charges were pending. Defendant concludes that since the 180–day period expired before the prosecution dis-

posed of his case, his conviction for second degree arson and burning to defraud an insurer must be reversed and he must be discharged with respect to those crimes. We disagree.

■■■ This court recently adopted a two-part test for determining when the 180–day period begins to run in a situation where an initial indictment has been dismissed and the defendant is subsequently reindicted. *See State v. Tiedeman*, 433 N.W.2d 237 (S.D.1988). Under this two-part test, the 180–day period begins to run anew upon reindictment if (1) the earlier indictment was properly dismissed by a competent judicial officer and (2) the record does not reveal evidence of a prosecutorial attempt to circumvent the 180–day rule. *Id.* (*citing Commonwealth v. Davies*, 342 Pa.Super. 318, 492 A.2d 1139, 1141–42 (1985)). *See also State v. Fisher*, 351 N.W.2d 798 (Iowa 1984); *State v. Jackson*, 645 S.W.2d 725 (Mo.App.1982); *State v. Mills*, 307 N.C. 504, 299 S.E.2d 203 (1983); *State v. Stephans*, 52 Ohio App.2d 361, 370 N.E.2d 759 (1977); *Commonwealth v. Whiting*, 509 Pa. 20, 500 A.2d 806 (1985); *Commonwealth v. Simms*, 509 Pa. 11, 500 A.2d 801 (1985). " '[P]roper dismissal' includes a dismissal for failure to make out a prima facie case at a preliminary hearing." *Tiedeman*, 433 N.W.2d at 239. Prosecutorial circumvention of the 180–day rule is most frequently evidenced by the expedient entering of a *nolle prosequi* [6] on the original indictment against the defendant and subsequently reindicting him on the same charges. *Stephans*, 370 N.E.2d at 766. Where the prosecution is voluntarily terminated and the record shows an attempt to manipulate the requirements of the 180–day rule, the time period will be computed from the date the defendant appeared before a judicial officer on the original indictment. *Whiting*, 500 A.2d at 808.

---

the time limit required by this section, the action shall be dismissed.

The dismissal required by SDCL 23A–44–5.1 is a dismissal with prejudice. *State v. Hoffman*, 409 N.W.2d 373, 376 (S.D.1987).

6. "A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of proceedings on a

particular bill or information, which can at any time be retracted to permit a revival of proceedings on the original bill or information." *Whiting*, 500 A.2d at 807. *See also* Black's Law Dictionary 945 (5th ed. 1979).

In the present case, the trial court, on its own motion, properly dismissed the initial indictment for lack of sufficient evidence to establish a prima facie case of first degree arson. Nothing in the record indicates that the state sought to have this indictment dismissed and then reindicted defendant merely to avoid the sanctions of SDCL 23A–44–5.1. In fact, defendant was reindicted and ultimately convicted on charges that differed from those set forth in the original indictment. During the period between the original indictment and the reindictment, defendant was neither incarcerated nor threatened with criminal prosecution. We therefore hold that the indictment against defendant ceased to have legal effect upon its dismissal by the trial court. The calculation of the 180–day period under SDCL 23A–44–5.1 began anew upon reindictment.

We next examine defendant's contention that the trial court erred in relitigating facts and issues during the motions hearing on July 29, 1987. Defendant essentially argues that once the facts and issues regarding his motion to suppress evidence of the January fire were determined at the motions hearings on May 26 and May 29, 1987, the trial court's granting his motion became *"res judicata."* [7]

We believe defendant's contention is unfounded. Although the trial court originally ordered the suppression of evidence seized after the January fire, no final order was reduced to writing, signed or duly recorded by filing. Orders are required to be in writing because the trial court may change its ruling before the order is signed and entered. *Lutz v. Iowa Swine Exports Corp.*, 300 N.W.2d 109, 111–12 (Iowa 1981). For this reason, unrecorded rulings on motions are ineffective and need not be considered at a later date. *Id.* at 111. *See also Hosner v. Brown*, 40 Mich.App. 515,

199 N.W.2d 295 (1972). We therefore hold that the trial court could properly reconsider defendant's motion to suppress evidence regarding the January fire.

Defendant's third contention alleges error on behalf of the trial court for allowing into trial evidence of the January fire. This evidence was introduced as other acts evidence, although the trial court had previously severed for trial the charges relating to the December fire from those relating to the January fire. Defendant claims that he was unduly prejudiced by the trial court's admitting evidence of the previous fire.

Evidence of other crimes, wrongs or acts is inadmissible in a criminal prosecution to establish the impermissible inference that since the defendant committed a similar offense on another occasion, he has a propensity to commit the crime charged. *State v. Champagne*, 422 N.W.2d 840, 842 (S.D.1988). *See also State v. Dokken*, 385 N.W.2d 493 (S.D.1986); *State v. Thomas*, 381 N.W.2d 232 (S.D.1986). Such evidence, however, may be admitted if it is relevant to a material issue, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. SDCL 19–12–5; *Champagne*, 422 N.W.2d at 842; *Dokken*, 385 N.W.2d at 497; *State v. Wedemann*, 339 N.W.2d 112, 115 (S.D.1983). Before "other acts" evidence can be admitted, the trial court must determine not only that the evidence is relevant, but also that its probative value substantially outweighs its prejudicial effect. *State v. Kerkhove*, 423 N.W.2d 160, 162 (S.D.1988); *Champagne*, 422 N.W.2d at 842; *Thomas*, 381 N.W.2d at 237. If the proffered other acts evidence meets the two-part test for relevancy and prejudicial effect, it may be admitted even though it relates to a crime that has been severed for trial. *State v. Johnson*, 748 P.2d 1069, 1075 (Utah 1987).

**7.** Defendant also claims that the trial court's rulings on May 26 and May 29, 1987, became the "law of the case." Although the principles of the law of the case doctrine and *res judicata* are similar, their application differs. The law of the case rule involves the effect of a previous ruling within one action on a similar issue of law raised subsequently within the *same* action.

The rules of *res judicata* apply to previous rulings in an action on a similar determination in a *subsequent* action. *State v. Scott*, 68 Or.App. 386, 681 P.2d 1188, 1190 (1984). In the present case, we apply the rules of *res judicata*. Because defendant was reindicted on *second* degree arson, this action is separate from that arising from his first indictment.

This court has repeatedly stated that "[a]ny fact that tends to connect an accused with the commission of a crime is relevant and has probative value." *State v. Sieler*, 397 N.W.2d 89, 92 (S.D.1986); *State v. Iron Shell*, 336 N.W.2d 372, 374 (S.D.1983); *State v. Johnson*, 316 N.W.2d 652, 654 (S.D.1982); *State v. O'Connor*, 84 S.D. 415, 420, 172 N.W.2d 724, 727 (1969). Furthermore, the prejudicial effect of such evidence "does not mean damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Kerkhove*, 423 N.W.2d at 163 (*quoting State v. Holland*, 346 N.W.2d 302, 209 (S.D.1984)). The delicate process of balancing the probative value against the prejudicial effect is within the sound discretion of the trial court. *Kerkhove*, 423 N.W.2d at 163; *Champagne*, 422 N.W.2d at 842; *Sieler*, 397 N.W.2d at 93. We will not disturb the trial court's decision absent a clear abuse of discretion. *Champagne*, 422 N.W.2d at 842; *State v. Grooms*, 399 N.W.2d 358, 361 (S.D.1987); *Dokken*, 385 N.W.2d at 497.

■ Although the proffered other acts evidence in the present case regarded a crime that had been severed for trial, we cannot find that the trial court abused its discretion in admitting this evidence.[8] The facts and circumstances surrounding the January fire were certainly relevant. There was a similar sequential relationship between the January fire and the December fire. Both fires occurred in the early morning hours when the mobile homes were unoccupied. In both cases, the point of the fire's origin was a hole which burned through the floor with an electrical appliance nearby and the use of accelerants was suspected. Defendant had insurance on both structures and their contents and collected insurance proceeds after the January fire. These similarities suggest motive, plan, preparation, knowledge, and absence of accident.

The trial court not only properly determined the relevancy of the other acts evidence, but also correctly decided that its probative value substantially exceeded the prejudicial effect. We do not doubt that evidence concerning the January fire had an adverse impact on defendant's case. Any capacity of this evidence to persuade by illegitimate means, however, was minimized by the trial court's instructing the jury on the limited purposes for which the evidence could be considered.[9] We pre-

8. The formal order entered by the trial court never stated joinder on all four counts would be prejudicial. The trial court merely formalized severance by agreement of the parties which is indicated as follows:

> THE COURT: ... And the first motion I want to talk about is the Motion for Relief of Prejudicial Joinder which the defendant has made in this case. Do you want to make any brief remarks on that?
> MR. MCCULLOCH: I would like to rest on the motion as I have worded it, Your Honor. There was some sort of communication from Mr. Thompson to you and I that he was only planning on proceeding on Count I and II of the indictment at this trial, and therefore the Motion for Relief from Prejudicial Joinder would be unnecessary, but I thought just to make the file cleaner and so that everybody would know what counts we are proceeding on, that I would make the motion and have an Order entered in that regard.
> THE COURT: Very well, you may keep an accounting of the rulings of this court, Mr. McCulloch, with respect to your motions since you will be responsible for the Orders that may be required to be entered with re-

spect thereto. So I will ask Mr. Thompson what his thoughts are concerning that motion?
> MR. THOMPSON: No opposition, Your Honor.
> THE COURT: *Very well, the motion is granted just for the record.* That means that the State will proceed I think now under Counts I and II, that is the December 31, 1986 fire. Is that clearly understood?
> MR. THOMPSON: Yes, Your Honor.
> THE COURT: So that takes care of that one....

Motion Hearing Tr. (July 29, 1987) at 2–3 (emphasis supplied).

9. Prior to the introduction of testimony regarding the January fire, the trial court instructed the jury as follows:

> THE COURT: I want to instruct the jury before you take any testimony on that. Ladies and gentlemen, evidence is about to be introduced for the purposes of showing that the defendant may have committed an act or a crime other than that for which he is now on trial. Now, such evidence, if believed, is not received and may not be considered by

sume that the jury followed this limiting instruction. *Sieler*, 397 N.W.2d at 94; *State v. Reddington*, 80 S.D. 390, 396, 125 N.W.2d 58, 62 (1964). Because the trial court weighed the prejudicial effect of the proffered evidence and carefully fashioned a limiting instruction to the jury, we cannot conclude that there was an abuse of discretion in admitting this evidence.

▪ We next consider defendant's claim that his extrajudicial statements regarding the January fire were improperly admitted by the court. Defendant contends that the state failed to set forth sufficient corroborative evidence before it introduced his admissions.

In *State v. Best*, 89 S.D. 227, 235, 232 N.W.2d 447, 452 (1975), we stated that "corroborating evidence must show (1) the fact of an injury or loss, and (2) the fact of someone's criminal responsibility for the injury or loss. These two elements have been held to comprise the 'corpus delicti' for purposes of the rule requiring such corroboration." We also set forth the level to which corroborative evidence must rise in *State v. Bates*, 76 S.D. 23, 71 N.W.2d 641 (1955). In *Bates*, we stated, "[t]he evidence of corpus delicti, independent of extrajudicial admission of the accused, need not be conclusive in character. Nor must the independent evidence be such that it alone be sufficient to prove the crime beyond a reasonable doubt." *Id.* at 28, 71 N.W.2d at 644.

The corroborating evidence in the present case meets both elements prescribed in *Best*. Through the testimony of Fodness, the state established that a loss had occurred and that there was probable

criminal involvement. Although this evidence was not conclusive, it met the sufficiency standard set forth in *Bates*. Because the *Best* and the *Bates* "tests" were satisfied, we cannot conclude that the trial court erred in admitting defendant's extrajudicial statements.

Defendant's next contention is that the trial court erred in denying his motion to suppress evidence seized by Brunick and Fodness after the January fire. Defendant claims that this evidence was seized pursuant to an unconstitutional search. We disagree.

▪ The constitutionality of a warrantless entry onto fire-damaged premises turns on the existence of legitimate privacy interest in such property. *Michigan v. Clifford*, 464 U.S. 287, 292, 104 S.Ct. 641, 646, 78 L.Ed.2d 477, 483 (1984). The legitimacy of this privacy interest is determined by a two-prong test: (1) whether the defendant has exhibited an actual subjective expectation of privacy and (2) whether society is willing to honor this expectation as being reasonable. *United States v. Katz*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587–88 (1967) (Harlan, J., concurring).

In *Clifford*, the Supreme Court stated that privacy expectations in fire-damaged premises vary according to (1) the owner's efforts to secure the premises and (2) the prior and continuous use of the premises. *Clifford*, 464 U.S. at 292, 104 S.Ct. at 646, 78 L.Ed.2d at 483. The Court held that "where a homeowner has made a reasonable effort to secure his fire-damaged home ..., a subsequent postfire search must be conducted pursuant to a warrant, consent,

---

you to prove that he is a person of bad character, or that he has a disposition to commit the crime. And particularly the crime of which he is charged. Such evidence is received and may be considered by you only for the limited purposes of determining if it tends to show the following: A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case. The existence of the intent, which is a necessary element of the crime charged. The identity of the person who committed the crime, if any, of which the defendant is accused. And

finally, a motive for the commission of the crime charged. Those are the only things that this type of evidence applies to. You are not required to consider this evidence and whether you do so or not is a matter within your own exclusive province. You may not consider it as tending to show in any other respect the defendant's guilt of the offense with which he here stands charged.

All right, now that applies to all evidence that you are going to listen to now from this point forward which involves an incident that happened on January 1, 1986. All right.

Trial Tr. at 351–53.

or the identification of some new exigency." *Id.* at 297, 104 S.Ct. at 468, 78 L.Ed. 2d at 486.

▆▆▆ In the present case, there is no indication that defendant made any attempt to secure his fire-damaged mobile home. To any extent the premises were "secured," this was done by the fire department for public safety purposes. There is also no indication that defendant intended to continue using the fire-damaged premises. Instead, his conduct evidences an intent to abandon the property in which he now claims a privacy interest existed. If defendant indeed held an expectation of privacy in the fire-damaged premises, we cannot see how his expectation could be reasonable.

Even if we assume that defendant exhibited a reasonable expectation of privacy in his fire-damaged mobile home, his conduct during the various stages of the investigation implied that he consented to the warrantless search. Defendant guided Brunick and Fodness through the premises, pointed out various items and answered all their questions. Although defendant never expressly consented to the search, his cooperation in the investigative efforts implied that no warrant was needed. *See United States v. Buettner–Janusch,* 646 F.2d 759 (2d Cir.1981); *United States v. Griffin,* 530 F.2d 739 (7th Cir.1976). For the aforementioned reasons, we hold that the trial court properly denied defendant's motion to suppress evidence seized after the January fire.

▆▆▆ In his final contention, defendant claims that the search warrant obtained on May 30, 1987, was invalid. Defendant argues that the warrant was based upon evidence which already had been suppressed and that any other facts upon which the affidavit was based were stale due to the passage of time.

We believe defendant's contention is unsupported by the record. The warrant was based upon Brunick's observations at the time of the fire and while in the line of duty. His observations were not suppressed after defendant was reindicted. Even if the warrant was partially based upon suppressed evidence, it remained valid. A search warrant may issue if the lawfully obtained facts by themselves establish probable cause. *State v. Guilbeault,* 336 N.W.2d 593, 597 (Neb.1983); *State v. Welsh,* 214 Neb. 60, 332 N.W.2d 685, 688 (1983).

▆▆▆ In *State v. Weiker (Weiker I),* 279 N.W.2d 683, 684 (S.D.1979), we stated, "[s]talensess of information is not to be determined solely by computing the length of the delay between the events relied upon and the issuance of the warrant." The test for staleness of information is "whether from the facts presented it is reasonably probable that the items to be seized are still on the premises." *State v. Weiker (Weiker II),* 342 N.W.2d 7, 10 (S.D.1983), *cert. denied,* 465 U.S. 1069, 104 S.Ct. 1422, 79 L.Ed.2d 747 (1984) (*quoting Weiker I,* 279 N.W.2d at 685).

Prior to issuing the warrant, the magistrate heard testimony from Brunick and a Vermillion police officer. They testified that the mobile home was in nearly the same condition in which it had been left after the December fire. The police officer also stated that he had observed no activity in the vicinity of the mobile home over the preceding six months. There is no indication in the record that the evidence sought by the state was not on the premises. In light of these facts and the general rule that "every reasonable inference possible should be drawn to support the determination of probable cause made by the magistrate" (*State v. Wielgus,* 278 N.W.2d 805, 806 (S.D.1979)), we conclude that the search warrant was valid.

We affirm the decision of the trial court in all aspects.

MORGAN and MILLER, JJ., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

What rationale can there be supporting (a) severing for trial counts one and two from three and four and (b) proceeding to then place the severed counts before the

jury in the form of "prior bad acts"? Decisions on severance and admissibility of evidence should work, like hand in glove, and be consistent with each other. Here, we have an inconsistency. Discretion must be exercised, based upon reason and evidence, and there can be no reason or logic behind severance—to preclude admissibility—and then permit the evidence to go before the jury. It is self-defeating and it defeats the entire purpose behind the grant of the severance in the first instance. We must remember that the trial judge did grant a motion to sever counts one and two from counts three and four because trial counsel for defendant insisted that to try them all together would be "prejudicial joinder." His motion was captioned "Motion for Relief from Prejudicial Joinder."

In my opinion, there has been an abuse of discretion in permitting evidence of these counts, which were severed for trial, to be admitted. Without doubt, the January 1, 1986 fire and the December 31, 1986 fire were severed for trial. Our standard of review is to determine if the trial court abused its discretion in admitting the evidence. *State v. Dace,* 333 N.W.2d 812 (S.D.1983). We must assume that the trial court granted severance, which is left to the trial court's discretion under *State v. Closs,* 366 N.W.2d 138 (S.D.1985), after it involved its consideration in a balancing of interest which included consideration of prejudice. *State v. Andrews,* 393 N.W.2d 76 (S.D.1986). It strikes this author that the trial judge honestly and fairly believed that there was an obvious prejudicial conflict in trying these counts together. Notwithstanding, the trial court changed its mind, during the course of trial, and permitted prejudicial evidence to be infused into the trial.

The limiting instruction contained in footnote 9 of the majority opinion, given by the trial court, was to try to wash clean the fact that the trial court was about to embark upon receiving evidence which, in absolute effect, had been severed. This limiting instruction could not have erased the prejudicial effect of this evidence from the jury's mind under the circumstances of this case. In point of fact, the limiting instruc-

tion reinforced the importance and applicability of the severed "bad act" or "crime." The so-called limiting instruction, found in footnote 9 of the majority opinion, emphasized that the jury could consider the "bad act" for four separate, specific purposes pertaining to the alleged crime upon which the defendant was not charged. Actually, the defendant was worse off than had the counts *not* been severed, for the State was now in a position where it did not have to prove the January 1, 1986 fire beyond a reasonable doubt. As I have written before, a jury cannot nicely cleave, like a surgeon with scalpel, the prejudicial from the nonprejudicial. Seeking to compartmentalize evidence within a jury's mind, by instruction, might work in theory; however, the practical effect is that the jury hears this damning evidence, in a case with circumstances such as this, and considers it notwithstanding the limiting instruction.

Hereby, reference is made to the minority viewpoint in *State v. Jenner,* 434 N.W.2d 76, 83 (S.D.1988) (Henderson, J., dissenting), for an abbreviated compilation of dissents by this author, all pertaining to the specific subject of prejudicial joinder/severance.

I join the rationale of Justice Sabers in his dissent.

SABERS, Justice (dissenting).

THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE JANUARY FIRE IN THE TRIAL ON CHARGES FROM THE DECEMBER FIRE AFTER GRANTING SEVERANCE.

SDCL 23A–11–2 states in part:

**23A–11–2. (Rule 14) Relief from prejudicial joinder of offenses or defendants.** If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Whether to grant severance is left to the trial court's discretion. *State v. Closs*, 366 N.W.2d 138 (S.D.1985). It involves a balancing of interests that includes consideration of prejudice. *State v. Andrews*, 393 N.W.2d 76 (S.D.1986).

Lowther moved to sever Counts I and II from Counts III and IV. This request was captioned: "Motion for Relief from Prejudicial Joinder." The three-paragraph motion claimed that it would be prejudicial to try the December fire with the January fire. The motion was granted. Despite this ruling, the trial court permitted the State to offer evidence of the January fire in the trial for the December 1986 fire.

SDCL 19–12–5 states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

SDCL 19–12–3 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

SDCL 19–12–3 and 19–12–5 require a balancing of probative value under one of the elements in SDCL 19–12–5 against the risk of unfair prejudice under SDCL 19–12–3. *State v. Dace*, 333 N.W.2d 812 (S.D.1983).

The majority opinion approves the trial court's ruling by stating:

Because the trial court weighed the prejudicial effect of the proffered evidence and carefully fashioned a limiting instruction to the jury, we cannot conclude that there was an abuse of discretion in admitting this evidence.

Although a limiting instruction *was* given, the trial court *failed* to balance the interests on the record.

Even if a balancing of interests had been performed by the trial court, I would challenge any purported finding that the probative value substantially outweighed the danger of unfair prejudice. In the May severance hearing the trial court granted the motion "to save time" because of the "difference in witnesses" and to avoid "confusing the jury" and stated:

[T]he evidence will accumulate and they [will] have difficulty ... distinguishing which belongs to which transaction.... [I]n this particular case it probably imposes an undue burden on the defense counsel having to prepare for two of these incidents, which are quite involved.

Obviously, this list of problems constitutes prejudice and did not change from the May severance hearing to the July severance hearing.

Trial counsel clearly preserved his record by making a motion in limine in connection with these prior bad acts, and at trial requested reconsideration of the court's ruling, but was denied. So he would not have to object in front of the jury, he asked for a standing objection to the other acts evidence.

In *State v. Dixon*, 419 N.W.2d 699 (S.D. 1988), this court dealt with the subject of severance of counts for trial and stated:

... [A] trend is developing that "the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense, ..." (citations omitted).

*Dixon, supra* at 702. Since the trial court found it too prejudicial to try the two fires together in one trial, it should have been too prejudicial also to admit bad act evidence of one fire in the trial of the other.

In *Dixon* we quoted with approval from *State v. Hoffman*, 106 Wis.2d 185, 209, 316 N.W.2d 143, 157 (1982) and stated:

'Any joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a [defendant] charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be

shown before relief will be in order.' [citation omitted]

*Dixon, supra* at 703.

Defense counsel persuasively argues that:

Logic dictates that if a higher degree of prejudice is necessary to demonstrate need for severance, and severance is then granted, prejudice must be severe enough to preclude admission of the severed counts as a prior bad act.

I agree. I would reverse and remand for a new trial consistent with this writing.